A02A2422. SIMS et al. v. HEATH.
(577 SE2d 789)

JOHNSON, Presiding Judge.
   This is an appeal from a judgment on a jury verdict entered in favor of Brenda Heath against her brothers, Edward and Wayne Sims (the "Simses"), for breach of fiduciary duties in the administration of the estate of their father. Following a seven-day trial, the jury awarded compensatory damages individually and jointly in the amount of $1,000,781, awarded punitive damages totaling $404,633, and removed the Simses as executors. The trial court approved the verdict and denied the Simses' motions for new trial, judgment notwithstanding the verdict, and to reduce damages. The Simses appeal, alleging the trial court committed 13 errors. For reasons which follow, we affirm the jury's verdict on the condition that, within ten days from the date the remittitur of this Court is made the judgment of the trial court, Heath agrees to strike therefrom the award of punitive damages in excess of $250,000; otherwise, the award of punitive damages is reversed.
   The record shows that Curtis Richard Sims died on October 19, 1992, leaving a will naming his two sons as executors. The will calls for the sale of the residue of the estate by the executors "as soon as is reasonable and practicable," with the residue to be divided equally among his four children, including Heath. According to the evidence presented at trial, the appellants reported the estate's gross value on the estate tax return in 1992 as $2,612,013. The net estate value was approximately $1,300,000. However, as of February 1996, Heath had received only $6,000 in distributions. And as of the trial in October 2001, the Simses had only distributed between $132,000 and $225,000 in cash to Heath.

---

[7] *Boggs v. Madison County*, 240 Ga. App. 849, 852 (524 SE2d 252) (1999).

Heath attempted to show at trial that the appellants failed to sell three parcels of land "as soon as is reasonable and practicable" in accordance with her father's will. The appellants attempted to show that they were complying with their father's will and that the land had simply not been purchased yet for a fair price. The jury found in favor of Heath.

1. The Simses contend Heath's real estate expert should not have been allowed to respond to the following question: "Could the executors have sold this property in July of 1996 for $2,005,500, in your opinion?" The Simses argue on appeal that the expert's response to this question was based on speculation. However, we find that the Simses' objection to this testimony goes to the weight of the evidence, not its admissibility.

Here, the record shows that the question to which the Simses objected refers to the eight-acre homeplace property located in Alpharetta. The Simses valued the property on the initial estate tax return at $295,000. However, the record shows that the Simses listed the property, before the estate tax return was filed, for $3,560,000. And Edward Sims testified that in 1996, the fair market value for the property was $4,500,000. After laying the foundation for his opinion, Heath's expert placed the true value for the property in July 1996 at $2,005,500, and stated it could have been sold for this price from 1993 on. He based his opinion on the market boom and on other comparable sales in the area. Heath's expert testified that in his opinion the Simses had a listing price three and a half times more than the property was worth, running people off because the price was too high.

The admissibility of expert testimony falls within the sound discretion of the trial court.[1] And on appeal we must consider the sufficiency of the evidence, not its weight.[2] As an expert qualified by the court to render testimony concerning real estate valuation, Heath's expert's testimony was competent and proper. The evidence presented sufficiently supported the expert's opinion, and any objection regarding the speculation of the expert's opinion goes to the testimony's weight, not its admissibility.[3] We find no error.

2. The Simses also objected to Heath's expert's opinion regarding how the Alpharetta tree ordinance affected their ability to sell the homeplace. At trial, the Simses testified that in June 1998, they entered into a contract with Amoco to sell part of the homeplace for $800,000, but that the contract was never closed because one tree on

---

[1] *Jackson v. Dept. of Transp.*, 159 Ga. App. 130, 133 (4) (283 SE2d 59) (1981).

[2] *Hawkins v. Grady County Bd. of Tax Assessors*, 192 Ga. App. 416, 417 (2) (385 SE2d 305) (1989).

[3] See *Howard v. State Hwy. Dept.*, 117 Ga. App. 280, 282-283 (2) (160 SE2d 204) (1968).

the lot could not be saved during development. According to the Simses the Alpharetta tree ordinance was going to be a problem no matter who bought the property.

Heath's expert testified that in reaching his valuation of the property, he considered how Alpharetta's more rigid enforcement of a tree ordinance negatively affected the value of the property. He testified that the Simses attempted to sell the land for too high a price considering the tree ordinance. He further testified that through 1996, it was "somewhat easy" to develop property and submit site plans showing what would be done with trees on the land, citing examples known to him. This testimony was admissible. The Simses' objections to the expert's testimony go to the weight to be given the expert testimony — a question exclusively for the trier of fact.[4]

3. The jury properly included "damages for the time value of money" as part of the measure of damages. OCGA § 53-12-193 (a) (3) mandates that a trustee who commits a breach of trust is personally chargeable with any damages resulting from the breach of trust, including, but not limited to, "[a]ny amount that would reasonably have accrued to the trust or beneficiary if there had been no breach of trust with interest."

The Simses argue that Heath was not entitled to "interest" on her breach of fiduciary duties claim because there is no provision for an award of interest on unliquidated tort claims.[5] However, the Simses only cite to two pages in the seven-day trial transcript where they objected to the mention of interest by Heath's expert. A review of these pages reveals that Heath's expert was calculating interest based on interest rates included in a note that he opined had gone delinquent. He also calculated interest on unpaid rent and the sale of real estate that was not distributed. These items constitute liquidated damages, and we find no error in the trial court's admission of this testimony. Moreover, even where damages are not liquidated, prejudgment interest may be awarded by the jury under OCGA § 13-6-13 in tort or breach of contract actions, either separately or as part of the damages.[6]

4. The Simses contend the trial court failed to give several of their jury instructions. Following a thorough review of the record, we find that "[i]f there were errors in the charge, they were inconsequential. The [Simses] lost, not because of the charge, but because [they] failed to impress the jury with the justness of [their] cause."[7]

---

[4] *Gen. Motors Acceptance Corp. v. Newton*, 207 Ga. App. 700 (429 SE2d 120) (1993).
[5] Except under the unliquidated tort claim statute, which is not applicable here.
[6] *Tower Financial Svcs. v. Smith*, 204 Ga. App. 910, 918 (4) (423 SE2d 257) (1992).
[7] (Citations and punctuation omitted.) *Jackson*, supra at 134 (6).

(a) The Simses first contend the trial court failed to give their request no. 1, which stated as follows:

> In the performance of his fiduciary duties, an executor . . . must exercise the care and diligence that an ordinarily prudent person would exercise under like circumstances in his own affairs. Otherwise stated, the executor, in discharging his trust duties, must exercise the care, prudence, and judgment that a person of fair average capacity and ability exercises in the transaction of his own business.

However, the record shows that the trial court did charge the jury that "[t]he executor of an estate has a duty to the beneficiaries in administering the estate to exercise such care and skill as a person of ordinary prudence would exercise in managing his or her own property." Since the principle embodied in the Simses' requested charge was substantially covered by the trial court's charge, there was no harmful error in the trial court's refusal to charge the precise language requested by the Simses.[8]

(b) Contrary to the Simses' argument, the trial court did not err in refusing to charge that "[a]n (executor) is not an insurer of the assets committed to his care in the settlement of his decedent's estate." As the Simses admit, there is no case law in Georgia supporting this charge. And, the trial court properly charged the jury on the standard of care required of executors in Georgia.

(c) Likewise, the Simses' requested charge concerning the right of an executor to rely upon advice of an accountant is not supported by Georgia authority. A trial court does not err in refusing to give a requested charge that is not legally accurate.[9]

(d) The trial court did not err in refusing to charge the Simses' request citing OCGA § 53-7-163 because this charge would have confused the jury with regard to Heath's right to elect her remedy. While it may be true that there are alternative remedies afforded under the Probate Code, the Simses' requested charge bears no relation to the relief requested by Heath. Heath elected to pursue her statutory right to damages for breach of fiduciary duty under OCGA § 53-7-54, and any reference to the Probate Code section was not relevant and would have been confusing. A trial court does not err in refusing to give a requested charge which is confusing, misleading, inapt, not

---

[8] *CSX Transp. v. McCord*, 202 Ga. App. 365, 369-370 (7) (414 SE2d 508) (1991); *Jackson*, supra.

[9] See *Wadkins v. Smallwood*, 243 Ga. App. 134, 139 (5) (530 SE2d 498) (2000).

precisely tailored or adjusted to the evidence, or not authorized by the evidence.[10]

5. The Simses contend the trial court erred in suppressing the fee agreement between Heath and her attorney. According to the Simses, by suppressing the fee agreement, the jury was left with the impression that Heath incurred bills to her attorney. We find no harmful error.

Evidence of the contingent fee agreement between Heath and her attorney was irrelevant to the issue of damages in the present case.[11] The Simses even conceded in the consolidated pre-trial order that the contingent fee agreement between Heath and her attorney was not the proper measure of damages with respect to attorney fees.

Even if the contingent fee agreement was relevant, a trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.[12] These matters are appropriately within the sound discretion of the trial court.[13] Here, the Simses have failed to establish that the trial court abused its discretion in excluding the contingent fee agreement. Thus, the Simses' claim of error is unpersuasive.

6. The Simses claim the trial court erred in overruling and denying their motions for directed verdict and motion for j.n.o.v. However, the Simses failed to satisfy the standard for obtaining a directed verdict or j.n.o.v.

> On appeal from a trial court's rulings on motions for directed verdict and j.n.o.v., we review and resolve the evidence and any doubts or ambiguities in favor of the verdict; directed verdicts and judgments n.o.v. are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict.[14]

Thus, a directed verdict or a j.n.o.v. may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment; if the evidence is conflicting, or if insufficient evidence exists to make a "one-way" verdict

---

[10] See *Joiner v. Lane*, 235 Ga. App. 121, 122 (2) (508 SE2d 203) (1998).

[11] See *Stoner v. Eden*, 199 Ga. App. 135, 136-137 (1) (404 SE2d 283) (1991).

[12] See generally *Dept. of Transp. v. Mendel*, 237 Ga. App. 900, 902 (2) (517 SE2d 365) (1999).

[13] Id. at 902-903.

[14] (Punctuation and footnote omitted.) *Paul v. Destito*, 250 Ga. App. 631 (550 SE2d 739) (2001).

proper, a directed verdict or a j.n.o.v. should not be granted.[15] Furthermore, when considering these motions, trial and appellate courts must view the evidence in the light most favorable to the party securing the jury verdict.[16]

Viewed in this light, we find the trial court properly denied the Simses' motions because the evidence was in conflict and did not demand a verdict in their favor on any ground asserted. The verdict fell fully within the range of evidence that turned on the credibility of each of the ten lay and expert witnesses, as well as the weight properly assigned to their testimony.

(a) With regard to the Simses' arguments regarding the "Hyde Park Note" issue, the "Jefferson County Farm losses" issue, the "undocumented expenses" issue, and the "losses due to property not being sold" issue, a review of the record shows that Heath's accounting expert testified as to all these matters. The Simses argue that Heath's accountant miscalculated interest on the note, failed to deduct the mortgage from the sales price on the farm property, and generally failed to prove that Heath suffered damages. We find no merit in these arguments.

Viewed in a light most favorable to Heath, the record shows sufficient evidence for these issues to proceed to the jury. OCGA § 53-7-54 authorizes an award of damages for the Simses' breach of fiduciary duty, and the evidence was sufficient to show a breach of fiduciary duty. The evidence was also sufficient for the jury to determine damages with reasonable certainty. The Simses' arguments merely go to the weight of the evidence and the credibility of the witnesses — matters within the exclusive province of the jury.

(b) As we held in Division 3, the jury properly included "damages for the time value of money" as part of the measure of damages. A directed verdict was not demanded on this issue.

(c) Likewise, a directed verdict was not demanded on the issue of punitive damages. The record contains ample evidence of the Simses' conscious disregard for Heath's rights as a beneficiary of her father's will.

7. The appellants contend the trial court erred in modifying the verdict form to allow a verdict for a "collective amount for three properties" and in denying their motion for mistrial. We disagree.

The record shows that the trial court formulated a verdict form which provided for specific verdict findings as to each of the three properties which had not been sold. Heath objected to the verdict form, arguing that it was too complex, particularly relating to the

---

[15] Id.
[16] Id.

property. Subsequently, through a series of written communications, the jury indicated that it had reached a verdict, but was unable to conform that verdict in the manner submitted on the special verdict form. After conferring with counsel, the trial court adjusted the verdict form to allow the jury to express its intended verdict by allowing three subparts of one question on the form to be answered collectively.

The Simses argue that the trial court erred in modifying the verdict form to allow the collective amount. According to the Simses, once a verdict form is sent out with the jury, it cannot be modified. If the jury was unable to answer the questions on the verdict form, that results in a finding of "no verdict," and the trial court should not modify the verdict form to acquire a verdict.

The form of a verdict and the submission of a special verdict are within the discretion of the trial court, and, absent an abuse of that discretion, the court's choice will not be overturned.[17] Even where a special verdict is required to be given to the jury, it is the court that "shall prescribe the form of the questions for submission to the jury."[18] And, the trial court may amend a verdict's form even after the jury has disbursed.[19] In one case, the jury informed the trial court that it had divided a total award into six equal parts merely to fill in spaces on a verdict form. Knowing this was the jury's intent, the trial court entered a judgment on the verdicts for the total amount rather than dividing the amounts.[20]

Furthermore, a trial court may mold a verdict "so as to do full justice to the parties."[21] Thus, if the verdict is imperfect, but the intention of the jury is clearly expressed, then the trial court should have the verdict put in the proper form in accordance with the jury's intention.[22] The jury may express its meaning in an informal manner, and the court has the right to put it in such form and shape as to do justice to the parties, according to the pleadings and the evidence.[23]

Here, there is no doubt of the jury's intention to award Heath an agreed-upon sum for damages regarding the three properties. The jury merely could not agree on individual figures for the separate properties. In the interest of justice, the trial court modified the verdict form to allow the jury to express its intention. We find no error in

---

[17] OCGA § 9-11-49 (a).
[18] OCGA § 9-11-49 (b).
[19] OCGA § 9-12-7.
[20] See *Efstathiou v. Reiss*, 227 Ga. App. 735 (490 SE2d 426) (1997).
[21] OCGA § 9-12-5; *Fried v. Fried*, 208 Ga. 861 (3) (69 SE2d 862) (1952).
[22] See *Hannula v. Ramey*, 177 Ga. App. 512, 513 (1) (339 SE2d 735) (1986).
[23] *Davis v. Wright*, 194 Ga. 1, 6 (4) (21 SE2d 88) (1942).

the trial court's action adjusting the verdict form to allow the jury to express its intended verdict.

8. According to the Simses, the trial court erred in not reducing the amount of damages because the damage awards were speculative and unauthorized. "The question of damages is ordinarily one for the jury; and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case."[24] Nothing offered by the Simses demonstrates that the damages awarded by the jury in this action were so excessive as to be inconsistent with the preponderance of the evidence.

"Where the trial judge approves the jury's verdict, the sole question for determination is whether there is any evidence to authorize it, with a view toward not upsetting it. We will not substitute our judgment based upon a cold record for that of enlightened jurors who heard the evidence and saw the witnesses."[25] We find sufficient evidence to authorize the jury's verdict.

Moreover, there is nothing to indicate that the jury's award of punitive damages in the collective amount of $404,633 is grossly excessive such that it violates due process considerations.[26] Evidence supported a jury's finding that the Simses' conduct in intentionally breaching their fiduciary duties was reprehensible, the compensatory damages exceeded the punitive damages by a ratio of over 2 to 1, and sanctions for comparable misconduct are sufficiently similar to satisfy due process.[27]

However, pursuant to OCGA § 51-12-5.1 (g), punitive damages are limited to a maximum of $250,000 for any tort action,[28] unless the trier of fact finds that the defendant acted, or failed to act, with the specific intent to cause harm. Here, the jury specifically found that neither Edward nor Wayne Sims acted with the specific intent to cause harm to Heath. Therefore, the trial court erred in denying the Simses' motion to reduce damages with respect to the punitive damage award.[29] The judgment can be affirmed only on the condition that, within ten days from the date the remittitur of this Court is made the judgment of the trial court, Heath agrees to strike there-

---

[24] OCGA § 51-12-12 (a).

[25] (Citation omitted.) *Efstathiou*, supra at 738 (5).

[26] See *Time Warner Entertainment Co. v. Six Flags Over Ga.*, 254 Ga. App. 598 (563 SE2d 178) (2002).

[27] Id.

[28] This subsection specifically excludes from the $250,000 cap on punitive damages those causes of action arising from products liability, which are governed by OCGA § 51-12-5.1 (e) (1).

[29] See *McDaniel v. Elliott*, 269 Ga. 262, 265 (3) (497 SE2d 786) (1998); *Scott v. Battle*, 249 Ga. App. 618, 621 (4) (548 SE2d 124) (2001).

from the award of punitive damages in excess of $250,000; otherwise, the award of punitive damages is reversed.[30]

9. The Simses contend the trial court erred in denying their motion for new trial for all the reasons addressed above. Since we have found no error in regard to the above arguments, this enumeration of error lacks merit.

*Judgment affirmed on condition. Blackburn, C. J., and Miller, J., concur.*

DECIDED NOVEMBER 22, 2002 —
RECONSIDERATION DENIED DECEMBER 4, 2002 ▮

*Chesnut, Livingston & Pye, Tom Pye, James C. Watkins*, for appellants.

*Caldwell & Watson, Harmon W. Caldwell, Jr., Wade H. Watson III, Robert S. Carlson*, for appellee.

---

[30] *Wal-Mart Stores v. Johnson*, 249 Ga. App. 84, 89 (6) (547 SE2d 320) (2001); *J. B. Hunt Transport v. Bentley*, 207 Ga. App. 250, 256 (2) (427 SE2d 499) (1993).