A04A1698, A04A1699. JAMES E. WARREN, M.D., P.C. v. WEBER & WARREN ANESTHESIA SERVICES, LLC et al.; and vice versa.
(612 SE2d 17)

MIKELL, Judge.

These related appeals arise from a dispute involving Weber & Warren Anesthesiology Services, LLC (the "LLC"), and its current and former members. At the relevant time, the LLC was composed of three members, all of whom were professional corporations: (1) James E. Warren, M.D., P.C. ("Warren"), with Dr. Warren as principal; (2) Jonathan Weber, M.D., P.C. ("Weber"), with Dr. Weber as principal; and (3) Samson Anesthesia, P.C. ("Samson"), with Dr. James D. Ellner as principal. On April 1, 2001, the LLC entered into a contract with Marietta Surgical Center ("MSC"), a surgical outpatient facility, giving the LLC exclusive rights to perform general anesthesia services at the center. Pursuant to the Operating Agreement for the LLC, net income was distributed equally to the members. The Operating Agreement provided that upon resignation, a former member would be entitled to:

> the total accounts receivable of the Company as of the date of . . . resignation . . . multiplied by a percentage equal to the Ex-Member's percentage for distributions. . . . This amount shall be paid on a monthly basis as the accounts receivable in existence at the time of . . . resignation are collected by the Company.

In December 2001, Dr. Ellner, the principal of Samson, lost his privileges at MSC. As a result, Warren and Weber resigned from the LLC effective January 14, 2002. Samson elected to continue the LLC. MSC terminated its contract with the LLC on January 17, 2002, and Weber and Warren joined another practice which was later awarded the MSC contract.

The LLC initially filed suit against Warren, Weber, and MSC, alleging numerous claims including breach of contract, conspiracy, breach of fiduciary duty, intentional interference with contractual relations, usurpation of business opportunity, and conversion, as well as seeking injunctive relief and a declaratory judgment regarding the LLC's obligation to distribute collected funds to the Weber and

Warren defendants. Warren brought counterclaims. Samson was added as a party and brought its own claims. Before trial, due to a settlement that resulted in the dismissal of Weber, the parties were realigned because some of the claims were transferred to a different forum. Thus, at trial, Warren proceeded as plaintiff against the LLC, with claims of breach of contract, quantum meruit, and for attorney fees. Samson proceeded on its counterclaim for breach of fiduciary duty against Warren.[1] After Warren rested its case, the LLC moved for a directed verdict, and the trial court granted the motion as to the quantum meruit claim only. The breach of contract and attorney fees claims went to the jury, along with Samson's claim of breach of fiduciary duty.

The jury returned a special verdict in favor of Warren on the breach of contract claim, and awarded $91,851 in damages. It also awarded Warren $66,000 in attorney fees under OCGA § 13-6-11 and made a specific finding that the LLC had caused Warren "unnecessary time, trouble and legal expense." The jury found in Warren's favor on Samson's claim for breach of fiduciary duty. Thereafter, the LLC moved for judgment notwithstanding the verdict (j.n.o.v.), or in the alternative for a new trial, arguing that Warren did not satisfy its evidentiary burden with respect to damages for breach of contract; that it failed to establish the LLC's liability for attorney fees; and that it failed to present evidence apportioning the amount of legal fees and expenses related to the breach of contract claim. Samson filed a motion for a new trial on the general grounds.

The trial court granted the LLC's motion for j.n.o.v. on the issue of attorney fees, finding that the evidence presented by Warren did not enable the jury to apportion the amount of fees and expenses related to the breach of contract claim. Warren appeals this judgment in Case No. A04A1698. The trial court denied the LLC's motion for j.n.o.v. on the breach of contract claim, finding that Warren met its burden of proving that it was entitled to one-third of the LLC's accounts receivable in existence at the time of its resignation, and also denied Samson's motion for a new trial. It is from this order that the LLC and Samson appeal in Case No. A04A1699.

### Case No. A04A1698

1. In its first enumerated error, Warren argues that the trial court erred in granting a j.n.o.v. to the LLC on the issue of attorney

---

[1] The trial court granted partial summary judgment to Warren on Samson and Dr. Ellner's claims of intentional infliction of emotional distress and intentional interference with business relations.

fees, because the LLC failed to raise Warren's alleged failure to apportion the fees in its motion for a directed verdict. We agree. It is clear from the trial court's order on the motions for j.n.o.v. and for new trial that it based its grant of j.n.o.v. as to the award of attorney fees solely on the issue of the amount awarded. In fact, the court expressly found that the jury was properly allowed to determine the LLC's liability for fees. The trial court held that Warren's failure to present sufficient evidence apportioning the amount of fees and expenses related to the successful breach of contract claim required a j.n.o.v. on that issue.

Significantly, however, the LLC failed to raise the issue of the apportionment of fees in its motion for a directed verdict. In fact, the only argument raised on the issue of attorney fees was that Warren had failed to prove liability. The LLC contends that it preserved the issue of apportionment when its counsel stated during Warren's case-in-chief that there had been no "break out" of the lawyers' time in connection with Warren's claim for attorney fees. However, this statement did not appear to have been made in connection with a motion, nor was it raised in the motion for a directed verdict or even at the close of Warren's evidence. In fact, after the above statement was made, Warren called its counsel as a witness to testify about the fees it incurred. The LLC has failed to point to any further mention in the record of this ground for a j.n.o.v.

Georgia law is clear that a motion for j.n.o.v. must be based on grounds raised in the motion for directed verdict. *Morrison Homes of Florida v. Wade,* 266 Ga. App. 598, 601 (3) (598 SE2d 358) (2004); *Famiglietti v. Brevard Med. Investors,* 197 Ga. App. 164, 166 (2) (397 SE2d 720) (1990); *Brantley Co. v. Simmons,* 196 Ga. App. 233, 234 (395 SE2d 656) (1990).

> OCGA § 9-11-50 (b) allows the device of a motion for judgment notwithstanding the verdict to be used when a motion for directed verdict does not end a trial and it proceeds to verdict. It is narrow, however, and does not permit reopening the case for new legal issues which are thought of retrospectively, with hindsight. It provides, however, a post-verdict opportunity for a determination of the legal questions raised by the motion for a directed verdict. If upon reflection the trial judge determines that the motion for directed verdict was valid, the judge is to set aside the verdict and the original judgment and enter a new judgment in accordance with the motion for directed verdict. It is patent, then, that the j.n.o.v. must be based on grounds raised in the motion for directed verdict initially, for it is in effect only a new ruling on a renewed motion. . . . The point is that a motion for j.n.o.v.

is simply a reasserted motion for directed verdict, with a second opportunity for the trial court to rule on it before time and expenses are incurred and appellate judicial resources are expended.

(Citation and punctuation omitted.) *Famiglietti*, supra at 166-167 (2). Accord *Lincoln v. Tyler*, 258 Ga. App. 374, 378 (3) (574 SE2d 440) (2002). See also *Nationwide Mut. Fire Ins. Co. v. Rhee*, 160 Ga. App. 468, 469-470 (1) (287 SE2d 257) (1981) (trial court "without authority" to entertain motion for j.n.o.v. based on ground not raised in motion for directed verdict). Accordingly, the trial court erred in granting a j.n.o.v. on the issue of attorney fees, and its judgment is hereby reversed in part.

Furthermore, arguments asserted in a motion for j.n.o.v. but not raised in the motion for directed verdict cannot be considered on appeal. *Famiglietti*, supra; *Wehunt v. ITT Business Communications Corp.*, 183 Ga. App. 560-561 (1) (359 SE2d 383) (1987). Based on our holding in this division, we need not consider the remaining errors asserted in this appeal.[2]

## Case No. A04A1699

2. In its first enumerated error, the LLC argues that the trial court erred in denying its motion for j.n.o.v. on Warren's breach of contract claim. It contends that Warren failed to establish the value of the accounts receivable as set out in the Operating Agreement and therefore did not prove its damages with reasonable certainty.

On appeal from a trial court's rulings on motions for directed verdict and j.n.o.v., we review and resolve the evidence and any doubts or ambiguities in favor of the verdict; directed verdicts and judgments n.o.v. are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict.

(Footnote omitted.) *Sims v. Heath*, 258 Ga. App. 681, 685 (6) (577 SE2d 789) (2002). "In considering a motion for a j.n.o.v. . . . , we review the evidence in the light most favorable to the party who won and who opposed the motion. [Cit.] If any evidence supports the verdict, we

---

[2] Without commenting on the sufficiency of the evidence, we note that the record contains evidence of Warren's attorney fees. Warren presented evidence on the total amount of attorney fees it incurred – $132,708.95, and Warren's counsel testified that the trial had cost approximately $69,500 in fees and expenses.

will affirm the trial court's denial of the motion[ ]." *Phillips v. Blankenship*, 251 Ga. App. 235-236 (1) (554 SE2d 231) (2001), citing *Crosby v. Kendall*, 247 Ga. App. 843, 846-847 (2) (545 SE2d 385) (2001). Because there is evidence in the record supporting the jury's verdict, we affirm the trial court's denial of the LLC's motion for j.n.o.v. on this issue.

The LLC is correct that a party seeking to recover for breach of contract must establish its damages with reasonable certainty. See *ISS Intl. Svc. Systems v. Widmer*, 264 Ga. App. 55, 63 (5) (589 SE2d 820) (2003); *Silco v. Gwinnett County Hosp. Auth.*, 151 Ga. App. 634 (260 SE2d 758) (1979). However, our review of the record reveals that Warren did offer such proof. It is undisputed that under the Operating Agreement, Warren was entitled to one-third of the accounts receivable as of the effective date of its resignation, January 14, 2002, and that the LLC had not paid Warren as of trial. Warren presented evidence that the exact amount of the LLC's accounts receivable as of December 31, 2001, was $596,303.09. Dr. Ellner testified that the LLC collected $152,168.06 in January 2002, and that at the end of that month, the accounts receivable were $440,514.15. At the time of the trial, the parties stipulated that the LLC had $256,289 in the bank. In addition to that sum, the LLC stipulated that $20,000 had been paid to its attorneys, and Dr. Ellner testified that approximately $57,000 remained in uncollected accounts receivable. Therefore, the record shows that at the time of trial, the amount of collected funds from accounts receivable was $276,289, including the $20,000 payment to the LLC's attorneys. The jury awarded $91,850 to Warren, which was approximately one-third of the collected funds.

Contrary to the LLC's argument, Warren's failure to demonstrate the exact amount of the accounts receivable on January 14, 2002, does not demand judgment in the LLC's favor.

> Where a party sues for specific damages, he has the burden of showing the amount of the loss, and of showing it in such a way that the jury may calculate the amount from the figures furnished, and will not be placed in the position where their allowance of any sum would be mere guesswork. However, the party does not lose his right of action for the damages because he can not furnish exact figures. The rule against the recovery of vague, speculative, or uncertain damages relates more especially to the uncertainty as to cause, rather than uncertainty as to the measure or extent of the damages.

(Citations and punctuation omitted.) *Witty v. McNeal Agency*, 239 Ga. App. 554, 562 (5) (521 SE2d 619) (1999), citing *Nat. Refrigerator &c.*

*v. Parmalee*, 9 Ga. App. 725 (72 SE 191) (1911). Further, the jury's award was well within the range of the evidence. See *Ideal Pool Corp. v. Poss*, 144 Ga. App. 651, 652 (242 SE2d 318) (1978). "Mere difficulty in fixing [the] exact amount [of damages], where proximately flowing from the alleged injury, does not constitute a legal obstacle in the way of their allowance, when the amount of the recovery comes within that authorized with reasonable certainty by the legal evidence submitted." (Citation omitted.) *Al and Zack Brown, Inc. v. Bullock*, 238 Ga. App. 246, 251 (2) (518 SE2d 458) (1999).

The LLC argues that evidence of the balance in its bank account at the time of trial was insufficient proof of the funds to which Warren was entitled, particularly in light of evidence of billings of approximately $6,000 for charges generated after Weber and Warren resigned. To be sure, the amount of the collected funds was not the proper measure of damages, nor was the amount of cash on hand. But all of the various figures proved at trial were aids to the jury in its task: to calculate with *reasonable* certainty the size of the accounts receivable on January 14, 2002. The two most important figures were, perhaps, the size of the receivables at the end of December 2001 and at the end of January 2002. In the absence of a verdict form requiring the jury to specify how it calculated damages, "the method by which a jury reaches a particular verdict is not a matter of which this [C]ourt can take judicial cognizance." (Citation and punctuation omitted.) *Brock v. Douglas Kohoutek, L.P.*, 225 Ga. App. 104, 108-109 (3) (483 SE2d 342) (1997). We note that a straight-line decrease in the size of the receivables during that month would mean that the receivables in the middle of the month, a day or so after the resignations, would have been about $578,400. A one-third share of that amount would be $172,802, a figure in excess of the jury's award. As noted above, the jury's verdict was about one-third of the collected funds, although by the terms of the contract, a resigning member was entitled to one-third of the receivables, but would be paid only as the funds were collected. In effect, this reduced the amount owing down to the amount of the actual collected funds.

"[W]eighing the evidence is a function for the jury and the trial court, not an appellate court." *Verde v. Granary Enterprises*, 178 Ga. App. 773 (1) (345 SE2d 56) (1986). The evidence provided a sufficient basis for the jury to determine Warren's damages with reasonable certainty. See *Widmer*, supra. Accordingly, there is evidence in the record to support the jury's verdict, and the trial court did not err in denying the LLC's motion for j.n.o.v. on this ground.

3. Next, Samson argues that the trial court erred in denying its motion for a new trial, because the verdict in favor of Warren on Samson's claim of breach of fiduciary duty is contrary to law. We apply the "any evidence" standard in reviewing a trial court's judgment on

a motion for new trial and construe the evidence most favorably toward the party opposing the motion. *Jordan v. Stephens*, 221 Ga. App. 8, 10 (3) (470 SE2d 733) (1996). Because there was evidence to support the jury's verdict on Samson's claim, we affirm the trial court's judgment.[3]

Samson brought a counterclaim of breach of fiduciary duty against Warren, alleging that Warren breached its duty to Samson by interfering with the LLC's contractual relationship with MSC.[4] In response to a motion in limine brought by Warren, the trial court ordered that (1) Samson could not argue breach of fiduciary duty based on events that took place after January 14, 2002; (2) Samson could not base its fiduciary duty claim on allegations of interference with business relationships, as these claims were disposed of on summary judgment; and (3) Samson could not base a fiduciary duty claim on the assertion that Warren had a duty to render services on behalf of the LLC after it resigned. Samson did not appeal this ruling.

Samson argues that by demonstrating that Warren was a member or manager of the LLC, it established that Warren owed a fiduciary duty to Samson. It further argues that the duty existed after the formal relations were dissolved, citing *Chaney v. Burdett*, 274 Ga. 805 (560 SE2d 21) (2002), and that Warren breached this duty by continuing to perform anesthesia services at MSC after its resignation from the LLC.

However, Samson's reliance on *Chaney*, supra, is misplaced because in that case a partner died, and the Supreme Court held that the surviving partner had a fiduciary duty to wind up the partnership affairs. There was no death in the present case; rather, Warren and Weber resigned, leaving the LLC with an active member, Samson, who retained control over the assets of the LLC. The Operating Agreement and Georgia law contemplate the resignation of an LLC member, and the act of resignation is not a breach of fiduciary duty. See OCGA § 14-11-305 (4). Further, MSC terminated the exclusive contract with the LLC. Samson has failed to point to any provision in the Operating Agreement prohibiting members who have resigned from forming a competing business or soliciting customers of the LLC.

The jury concluded that Warren did not breach a fiduciary duty owed to Samson. Because there is evidence to support this verdict, we affirm.

---

[3] Samson also argues that the verdict was strongly against the weight of the evidence; however, we are unable to consider this argument because weighing the evidence is a function of the jury and trial court, not an appellate court. *Verde*, supra.

[4] The underlying trial concerned Samson's claims against Warren, P.C. and not against Dr. Warren individually.

4. The LLC and Samson argue that the trial court erred in failing to give their requested jury charge 40, which stated:

> In circumstances where a member in a limited liability company has [a] right to dissolve the company, if it is proved that [a] member acted in bad faith and violated fiduciary duties by attempting to appropriate to his own use the prosperity of the company without adequate compensation of fellow members, the dissolution would be wrongful and the member would be liable for violation of implied agreement not to exclude other member wrongfully from a business opportunity belonging to the company.[5]

The language of the charge came from *Wilensky v. Blalock*, 262 Ga. 95, 98 (414 SE2d 1) (1992), which the appellants acknowledge was decided under the Georgia Uniform Partnership Act and did not involve an LLC. Because the requested charge was not an accurate statement of the law, the trial court properly refused to give it. See *Sims*, supra at 684 (4) (c).

5. Finally, the LLC and Samson contend that the trial court erred in instructing the jury as follows: "A member of an LLC means a person who has been admitted to a limited liability company as a member, and who has not ceased to be a member of the LLC by resignation, death, or sale of the membership interest." The LLC and Samson argue that this was not an accurate statement of the law and that it was not adjusted to the evidence; however, they provide no legal authority for their argument. Because the above charge recites the statutory definition of a member of an LLC as provided in OCGA §§ 14-11-101 (16) and 14-11-601 (b), it was properly given.

*Judgment reversed in Case No. A04A1698. Judgment affirmed in Case No. A04A1699. Blackburn, P. J., and Barnes, J., concur.*

DECIDED FEBRUARY 23, 2005 —
RECONSIDERATION DENIED MARCH 17, 2005.

*Stites & Harbison, J. D. Humphries III, Steven D. Cooper, Paul J. Pontrelli, McGuire Woods, Timothy H. Kratz*, for appellant.

---

[5] The LLC and Samson have failed to provide a record citation for this requested charge. Because Warren has not asserted that the proposed charge as quoted in the LLC and Samson's appellate brief is incorrect, we will assume that this was the language given to the trial court. The record in this case contains 22 volumes. The appellants bear the burden of providing accurate record citations, and we will not cull the record on the appellants' behalf. See *Sharp v. Greer, Klosik & Daugherty*, 256 Ga. App. 370, 373 (5) (568 SE2d 503) (2002).

*Weinstock & Scavo, Michael Weinstock, John B. Levy, Elizabeth M. Jaffe*, for appellees.