A06A1457. FERTILITY TECHNOLOGY RESOURCES, INC.
v. LIFETEK MEDICAL, INC.
(637 SE2d 844)

ELLINGTON, Judge.

Fertility Technology Resources, Inc. ("FTR") filed this action in the Superior Court of Newton County against Lifetek Medical, Inc. A jury found in favor of FTR on its claims of breach of contract and

tortious interference with a contractual or business relationship.[1] In addition, the jury found in favor of FTR on its claim for litigation expenses including attorney fees, which brought the total award to $133,220. After a hearing, the trial court granted in part Lifetek's motion for judgment notwithstanding the verdict, setting aside the jury's award for tortious interference with a contractual or business relationship and attorney fees. For the following reasons, we reverse.

A motion pursuant to OCGA § 9-11-50 (b) for judgment notwithstanding the verdict

> may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is conflicting evidence, or there is insufficient evidence to make a "one-way" verdict proper, judgment [notwithstanding the verdict] should not be awarded.

(Citations and punctuation omitted.) *Goggin v. Goldman*, 209 Ga. App. 251, 252 (433 SE2d 85) (1993). In considering the motion, the trial court must view the evidence in the light most favorable to the party who secured the jury verdict and who opposed the motion for judgment notwithstanding the verdict. Id. Likewise,

> [o]n appeal from a trial court's rulings on motions for directed verdict and [judgment notwithstanding the verdict], we review and resolve the evidence and any doubts or ambiguities in favor of the verdict; directed verdicts and judgments [notwithstanding the verdict] are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict.

(Citations and punctuation omitted.) *Warren v. Weber & Warren Anesthesia Svcs.*, 272 Ga. App. 232, 235 (2) (612 SE2d 17) (2005).

Viewed in the light most favorable to FTR, the evidence showed the following.[2] In early 1998, FTR was an established company,

---

[1] In the special verdict form, the jury also indicated that it found in FTR's favor on its claim of "common law unfair competition," but found that FTR sustained no damages as a result.

[2] We note that the trial court ruled on Lifetek's motion over 14 months after the trial. The trial court asked the parties either to submit a trial transcript or to summarize the testimony of each witness. Neither party submitted a complete trial transcript for the court's consideration. FTR submitted a summary of the witnesses as well as selected transcript excerpts. Lifetek failed to submit any record support for its motion. In addition, Lifetek failed to designate any portion of the record for consideration on appeal and failed to file any brief in response to FTR's appeal.

owned and operated by George Ausman and C. W. Sturgeon, which did business as a distributor of medical supplies and equipment used in fertility clinics. Michael Kvalo operated Lifetek, a manufacturer of certain fertility practice equipment and supplies. Ausman approached Kvalo and proposed that FTR serve as Lifetek's exclusive distributor for its intrauterine insemination ("IUI") catheters. The two men began discussing the possibility of creating a new product to compete with the Wallace brand embryo transfer catheter. The parties eventually agreed that FTR would invest $45,000 in Lifetek and that, in exchange, Lifetek would design and manufacture an 18 centimeter long embryo transfer catheter. Under the parties' agreement, FTR owned the product, which was called the Embryo Glide, and had the exclusive right to sell the product to customers. Lifetek agreed to manufacture the product for FTR, and FTR agreed to pay Lifetek a set fee for each unit it ordered from Lifetek. The parties also discussed bringing to market a 23 centimeter version of the Embryo Glide later. After Lifetek began manufacturing the 23 centimeter version, both FTR and Lifetek claimed ownership of the product.

Three years after launching the 18 centimeter Embryo Glide, Kvalo asked Ausman and Sturgeon to invest an additional $ 9,500 in Lifetek. Kvalo refused to concede that FTR would also own the 23 centimeter Embryo Glide, either as a result of FTR's original $45,000 payment or as a result of the requested additional funds. FTR did not provide the $9,500 Kvalo requested. In February 2002, Kvalo notified Ausman that Lifetek would no longer manufacture the Embryo Glide, terminating the parties' production/distribution agreement.

Ausman asked that Lifetek deliver to FTR the engineering specifications, production equipment, and Federal Drug Administration ("FDA") approval, which were needed to produce the Embryo Glide, so that FTR could find another manufacturer. Lifetek provided the engineering specifications, "tipping dyes" (tools which were used in production of the catheters), and a portion of the FDA materials. Kvalo testified that he did not send the entire FDA authorization, which was necessary for FTR to be legally allowed to produce the Embryo Glide, because he did not want to spend the time required to copy the voluminous document. In addition, Kvalo flatly refused to provide a plastic injection mold Lifetek used to produce not only the Embryo Glide but also Lifetek's other products, the IUI catheter and an oocyte retrieval needle. Kvalo even refused to cooperate in the creation of a duplicate mold. When Ausman mentioned potential legal action, Kvalo told Ausman he would "drag [FTR's] case out forever" and, if ordered by a court to turn over the mold, he would "take it to the city dump and trash it before [he] ever gave it to" FTR.

Frustrated in its efforts to have the Embryo Glide manufactured at another facility, FTR started over and recruited another manufacturer to develop an embryo transfer catheter in 18 and 23 centimeter lengths and paid for the creation of engineering specifications, plastic molds and other necessary production equipment. In addition, FTR incurred expenses obtaining FDA approval of its new product. For about one year, FTR had no embryo transfer catheter to sell to its customers.

Meanwhile, Lifetek began selling embryo transfer catheters and other products directly to many of the customers who formerly bought the products from FTR and other distributors. Kvalo relabeled about 1,000 18 centimeter FTR Embryo Glides which remained in Lifetek's possession after it terminated the manufacturing/distribution agreement with FTR as "18.5 centimeter" Lifetek embryo transfer catheters. At least until ordered by the trial court to stop, Lifetek marketed the relabeled Embryo Glides to FTR's customers. In addition, Lifetek set its retail price for the 23 centimeter catheter at less than the wholesale price it charged FTR. FTR was forced to sell its new embryo transfer catheter at a lower price than it deemed reasonable due to Lifetek's competing sales of the Embryo Glide.

After hearing the evidence at the trial on FTR's action, the jury returned a verdict in which it answered a series of special questions. The jury found that FTR owned the 18 centimeter embryo transfer catheter and the FDA authorization, while Lifetek owned the 23 centimeter catheter and the plastic mold which was used to produce both sizes of the catheter. The jury found in favor of FTR on its breach of contract claim, awarding $15,500 in damages for "costs to develop new catheter." Lifetek did not challenge these portions of the verdict in its motion for judgment notwithstanding the verdict.

The jury also found in favor of FTR on its claim for tortious interference with a contractual or business relationship, awarding $12,720 in damages. As to this portion of the award, the trial court granted Lifetek's motion for judgment notwithstanding the verdict, noting there was "no direct specific testimony to show how [Lifetek] actually tortiously interfered with [FTR's] business relations."

Finally, the jury found in FTR's favor on its claim for litigation expenses and awarded attorney fees in the amount of $105,000. The trial court granted Lifetek's motion for judgment notwithstanding the verdict as to this portion of the award, finding that "there was a bona fide controversy between the parties as to the issues and the litigation" and, therefore, that FTR could not recover on the basis of stubborn litigiousness. On the alternative basis of bad faith, the trial court found that there was no evidence to support an award of attorney fees under OCGA § 13-6-11. The court inferred from the jury's response to the special questions in the verdict that "it is clear

that the parties were simply in a business negotiation and were dealing at arms length." "The court [found] that there simply is no bad faith exhibited by [Lifetek] because the parties could not agree on who owned what in their negotiations, and until that issue was resolved by the jury, there existed a bona fide controversy between the parties." As a result, the trial court set aside the portion of the verdict awarding attorney fees and expenses.

1. FTR contends the trial court erred in concluding that the evidence demanded a defendant's verdict on its claim for tortious interference with a contractual or business relationship. We agree.

> Parties to a contract have a property right therein with which a third party cannot interfere without legal justification or privilege, and a party injured by another's wrongful interference may seek compensation in tort. In order to prevail on a claim alleging tortious interference with contract, a plaintiff must establish the existence of a valid contract and that the defendant acted intentionally, without privilege or legal justification, to induce another not to enter into or continue a business relationship with the plaintiff, thereby causing the plaintiff financial injury.

(Citations omitted.) *Atlanta Market Center Mgmt. Co. v. McLane*, 269 Ga. 604, 608 (2) (503 SE2d 278) (1998).

The evidence in the record established that Lifetek sold to FTR all rights to the 18 centimeter embryo transfer catheter. Lifetek later terminated its agreement to manufacture the Embryo Glide for FTR and began marketing the relabeled FTR catheters to FTR's customers. This is not a case in which one vendor competes with another by offering customers a better price. See *U. S. Anchor Mfg. v. Rule Indus.*, 264 Ga. 295, 298-299 (3) (443 SE2d 833) (1994); *Parks v. Atlanta News Agency*, 115 Ga. App. 842, 845-846 (156 SE2d 137) (1967). Rather, in this case, there was evidence that Lifetek wrongfully interfered in FTR's business relationship with its customers by marketing to those customers a product Lifetek had no legal right to sell. Accordingly, the trial court erred in setting aside the jury's verdict in favor of FTR on its tortious interference claim. *Waugh v. Waugh*, 265 Ga. App. 799, 802 (3) (595 SE2d 647) (2004); *Griffin v. Associated Payphone*, 244 Ga. App. 183, 185 (1) (b) (534 SE2d 540) (2000).

2. FTR contends Lifetek waived any issue with respect to the jury's award on FTR's claim for litigation expenses by failing to raise the issue in its motion for a directed verdict. See *Warren v. Weber & Warren Anesthesia Svcs.*, 272 Ga. App. at 234-235 (1) (a motion for judgment notwithstanding the verdict may only be based on grounds

raised initially in a motion for directed verdict; arguments asserted in a motion for judgment notwithstanding the verdict but not raised in a motion for directed verdict cannot be considered on appeal). Implicit in the trial court's ruling on Lifetek's motion for judgment notwithstanding the verdict regarding the jury's award of litigation expenses is a finding that Lifetek raised the issue in its motion for a directed verdict. In the absence of a transcript of Lifetek's motion for a directed verdict, we must rely on the "presumption in favor of the regularity of all proceedings in a court of competent jurisdiction" and assume the trial court ruled only on matters properly presented to it. *Coffee v. Silver*, 195 Ga. App. 247, 248 (1) (393 SE2d 58) (1990). The record in this case does not support a finding of waiver.

3. FTR contends the trial court erred in concluding that the evidence demanded findings which precluded an award of litigation expenses, specifically that there was a bona fide controversy and that Lifetek had not acted in bad faith. FTR contends the trial court "interjected itself into the role of jury, reinterpreting and reweighing the evidence."

> A plaintiff is entitled to recover attorney fees under OCGA § 13-6-11 only if he can establish that the defendant has acted in bad faith in the underlying transaction. Therefore, the element of bad faith relates to the defendant's conduct in entering into the contract or pertains to the transaction and dealings out of which the cause of action arose, not to the defendant's conduct after the cause of action arose. Even slight evidence of bad faith can be enough to create an issue for the jury.

(Citations and punctuation omitted.) *Morrison Homes of Florida v. Wade*, 266 Ga. App. 598, 600 (2) (598 SE2d 358) (2004). Thus, if there was even slight evidence of bad faith in the underlying transaction on the part of Lifetek, we must reverse the trial court's grant of judgment notwithstanding the verdict as to this award.

First, as we held in Division 1, supra, the record contains evidence sufficient to support the jury's award of damages for tortious interference. Because tortious interference is an intentional tort, which indicates bad faith, the award on that claim authorized an award under OCGA § 13-6-11. *Witty v. McNeal Agency*, 239 Ga. App. 554, 556 (1) (b) (521 SE2d 619) (1999).

Further, the record contains other evidence of bad faith. The evidence authorized the jury to find that, when Lifetek entered into the contract with FTR, Kvalo never intended for Lifetek to give FTR possession of everything it needed to manufacture the Embryo Glide in the event Lifetek stopped manufacturing the product for FTR.

Specifically, the record shows that in exchange for FTR's $45,000 investment in Lifetek, Kvalo agreed to transfer ownership to FTR of the right to manufacture the 18 centimeter Embryo Glide and of everything needed to manufacture the product. But Kvalo (and not Ausman) knew at the time that Lifetek's other products were manufactured using the same plastic mold as it used to produce the Embryo Glide. In addition, Kvalo's conduct provided some evidence of bad faith in the dealings out of which the cause of action arose, such as his failure, after giving notice that Lifetek would stop manufacturing the 18 centimeter Embryo Glide, to provide the plastic mold and complete FDA authorization so that FTR could find another manufacturer.

Regardless of whether the trial court found this evidence persuasive, FTR identified record evidence of bad faith sufficient to defeat Lifetek's motion for judgment notwithstanding the verdict on FTR's claim for litigation expenses. Accordingly, the trial court's ruling setting aside the jury's award of litigation expenses is reversed. *Ins. Co. of North America v. Allgood Elec. Co.*, 229 Ga. App. 715, 719 (3) (a) (494 SE2d 728) (1997).

*Judgment reversed. Johnson, P. J., and Mikell, J., concur.*

DECIDED OCTOBER 31, 2006.

*Arnall, Golden & Gregory, Adam C. Gajadharsingh*, for appellant.

*Greer, Stansfield & Turner, Robert H. Stansfield*, for appellee.