**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**November 22, 2022**

# In the Court of Appeals of Georgia

A22A1356. VELAZQUEZ v. MATA.

MERCIER, Judge.

Following a failed business venture, Laura Velazquez sued Jose Mata for numerous claims, including breach of fiduciary duty, breach of contract, and attorney fees.[1] The case proceeded to trial, and the jury returned a general verdict in Velazquez's favor for $50,000 in damages plus $10,000 in attorney fees. Mata subsequently moved for a judgment notwithstanding the verdict ("JNOV"). The trial

---

[1] The complaint originally included three other defendants. The trial court granted Velazquez a default judgment against one of those defendants and dismissed the other two from the case.

court granted the motion and entered judgment for Mata on all of Velazquez's claims. Because at least some evidence supports the jury's verdict, we reverse.[2]

Viewed in the light most favorable to the verdict, see *Fertility Technology Resources v. Lifetek Med.*, 282 Ga. App. 148, 149 (637 SE2d 844) (2006), the evidence shows that Velazquez met Mata in 2007, when she began working as a hostess at one of his restaurants. In 2011, Mata suggested that she invest in a new restaurant with him. Velazquez initially declined the invitation, but in 2013, Mata again encouraged her to invest, informing her that he had found a good location for the new restaurant and that he would be a primary investor. Mata assured Velazquez that he would "take good care" of her money and triple the investment in two years. He also stated that he would be present at the new restaurant, oversee operations, and remain part of the business. Velazquez ultimately agreed to invest $60,000 in the venture.

---

[2] Mata claims that we must affirm the trial court's ruling because Velazquez failed to include a transcript from the hearing on his motion for JNOV in the appellate record. According to Mata, the absence of this transcript creates a presumption that the ruling was supported by "credible evidence." Our review, however, is based on the evidence presented at trial, and we have a full transcript of the trial proceedings. See, e. g., *Fertility Technology Resources v. Lifetek Med.*, 282 Ga. App. 148, 149 (637 SE2d 844) (2006). We do not need a transcript of the parties' post-judgment oral argument to resolve this appeal.

2

As an investor, Velazquez became a member of Iguana Group, LLC, along with Mata (who was to invest $90,000 in the business) and two other individuals, Luis Ramirez (who was to invest $90,000) and Imar Ali (who was to invest $70,000). Pursuant to a November 6, 2013 operating agreement, Iguana Group's purpose was "to conduct business as a Full-Service Restaurant." The agreement designated Mata as "Chief Executive Manager" and the other three member investors as "Managers." It further identified the "Chief Executive Manager" as the individual with "primary responsibility for managing the operations of the Company and for effectuating the decisions of the Managers." Among other provisions, the agreement restricted the members' ability to transfer their interests in the company and required managers to provide corporate information to members upon request.

The four investors met weekly to discuss plans for the restaurant. In 2013 and 2014, Mata directed Velazquez to make various purchases and payments for the restaurant as part of her investment in Iguana Group. After she had committed her entire $60,000 fund, Velazquez asked Mata several times for information about the total amount invested in Iguana Group, but Mata "always avoided [her]." Although she saw copies of payments made by Ali, she was never shown any records reflecting how much Mata or Ramirez had actually invested.

The new restaurant opened in the summer of 2014 under the name "Cotton &

Corn." Mata told Velazquez that she needed to spend all of her time at the location,

and she left her job at Mata's other restaurant to work at Cotton & Corn in September

2014. According to Velazquez, she handled "everything" at the new restaurant and

had been told by Mata that she would be paid for her efforts. The Iguana Group

operating agreement also provided that any manager who rendered services to the

company was entitled to compensation. Mata, however, did not "pay [Velazquez] a

penny" for her work at Cotton & Corn. Moreover, despite his assurances that he

would oversee the venture, Mata spent no time at Cotton & Corn and gave Velazquez

little guidance as she tried to run the restaurant.

Approximately six weeks after Velazquez began working at Cotton & Corn,

an individual named Anthony Pergola entered the restaurant and handed her a revised

operating agreement for Iguana Group dated September 25, 2014.[3] Under this version

of the agreement, Mata and Ramirez were replaced as LLC members by Pergola's

wife, Michelle, who was identified as the sole managing member. The document

specified that Michelle, after an investment of $320,000, owned 90 percent of the

---

[3] Mata asserts that evidence regarding this revised agreement cannot be considered because the agreement is not part of the record. A copy of the document, however, was admitted into evidence at trial and appears in the appellate record.

4

company, reducing Velazquez's share from 20 percent under the original operating agreement to 5 percent under the new agreement. Velazquez, who had not consented to these changes, did not sign the revised agreement. Nevertheless, Pergola "kicked [her] out" of Cotton & Corn in October 2014 and fired her from the restaurant. Velazquez tried to speak with Mata about her investment, but he would not answer her calls. She never received any profits or other distributions relating to Cotton & Corn, which ultimately closed.

Velazquez sued Mata in July 2019 for several claims, including breach of fiduciary duty, breach of contract, and attorney fees. The case proceeded to trial, and the jury returned a general verdict for Velazquez, awarding her $50,000 in damages and $10,000 in attorney fees. The trial court initially entered a final judgment of $60,000 for Velazquez, but later granted Mata's motion for JNOV, vacated the judgment, and entered a new judgment for Mata on all claims. This appeal followed.

1. A trial court may grant a motion for JNOV "only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." *Fertility Technology Resources*, supra at 149 (citation and punctuation omitted). A JNOV is "not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable

5

deductions therefrom, demands a certain verdict." Id. (citation and punctuation omitted). If any evidence supports the jury's verdict, "we must reverse the grant of [a JNOV]." *Sprayberry Crossing Partnership v. Phenix Supply Co.*, 274 Ga. App. 364, 364 (617 SE2d 622) (2005).

Velazquez argues that she offered sufficient evidence to establish the three elements required for a breach of fiduciary duty claim: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach. See *Schinazi*, supra at 798 (3) (a). We agree.

A managing member of a limited liability corporation ("LLC") owes a fiduciary duty to other member investors to act with the utmost good faith and loyalty in managing the LLC. See *Internal Med. Alliance v. Budell*, 290 Ga. App. 231, 236-237 (4) (659 SE2d 668) (2008). As Iguana Group's Chief Executive Manager, Mata held primary responsibility for managing LLC operations and carrying out management decisions, and the original operating agreement required him to act in good faith when executing these responsibilities. Based on this evidence, the jury was authorized to conclude that Mata owed Velazquez a duty of good faith. See id. at 237 (4).

The record further supports a finding that Mata breached this duty. Velazquez testified that Mata did not engage with the new restaurant, failed to respond to her

6

financial inquiries, and did not compensate her for work at the restaurant. Without consulting her or requesting approval, Mata also attempted to divest himself from the venture in a manner that promised to significantly reduce Velazquez's ownership share and transfer sole managerial control to a new investor. Such conduct contravened the clear terms of the original operating agreement. Given these circumstances, the jury could find that Mata failed to act in good faith and breached his fiduciary duty to Velazquez. See *Internal Med. Alliance*, supra at 238 (4); see also *Schinazi v. Eden*, 338 Ga. App. 793, 801 (4) (a) (792 SE2d 94) (2016) ("[G]enerally, questions of bad faith must be resolved by the jury."). And it could conclude that Mata's actions proximately caused Velazquez damage by undermining her work at the restaurant and imperiling her $60,000 investment, which she lost.

Moreover, because this type of breach is an intentional tort that "invokes a species of bad faith that entitles a person wronged to recover the expenses of litigation including attorney fees," Velazquez's claim for attorney fees also raised jury questions. See *Schinazi*, supra at 801 (4) (a). Rather than demanding a defense verdict, the evidence presented issues to be decided by the jury and provided support for the verdict in favor of Velazquez. Accordingly, the trial court erred in granting Mata a JNOV. See *Fertility Technology Resources*, supra at 152 (1).

7

2. Although Mata claims that the award of $50,000 in compensatory damages and $10,000 in attorney fees lacks any basis in fact, jurors heard evidence that Velazquez had invested $60,000 in Iguana Group, worked hard to make the restaurant a success, and spent $10,000 on attorney fees pursuing her claims against Mata. The jury's damages calculation was within the range of evidence and not so excessive as to justify an inference of gross mistake or undue bias. Accordingly, we will not interfere with the award. See *Green v. Proffitt*, 248 Ga. App. 477, 478 (1) (545 SE2d 623) (2001) ("The issue of damages is a matter for the jury, and a reviewing court should not interfere with the jury's damages award unless it is so small or excessive that it justifies an inference of gross mistake or undue bias.").

*Judgment reversed. Dillard, P. J., and Markle, J., concur.*