## A04A1770. WILKINSON HOMES, INC. v. STEWART TITLE GUARANTY COMPANY.
## A04A1771. STEWART TITLE GUARANTY COMPANY v. WILKINSON HOMES, INC. et al.

(610 SE2d 187)

SMITH, Presiding Judge.

When Mark and Patricia Conard bought a house from Wilkinson Homes, Inc., they purchased an owner's title insurance policy from Stewart Title Guaranty Company. Later, after an adjoining land-owner asserted an adverse ownership interest in a portion of the Conards' property, Stewart Title paid $40,000 purportedly to resolve that claim. Stewart Title then filed suit against Wilkinson Homes and its president, individually, to recover damages for breach of warranty of title and attorney fees. On motions for summary judgment filed by both sides, the trial court found Wilkinson Homes liable to Stewart Title for the breach but left the measure of damages for determination by a jury. In addition, the trial court found the president of Wilkinson Homes was not liable and granted his motion for summary judgment. Both sides appeal. After review, we affirm in both cases.

By a general warranty deed, Wilkinson Homes conveyed Lot 14 of the Litchfield Hundred subdivision lying in Land Lots 938 and 1007 to the Conards. In May 2000, nearly 16 months after that conveyance, the Conards' next door neighbor, George Massey, obtained a survey of his property and learned that part of the Conards' driveway and the turnaround servicing their house encroached upon his property. Massey offered to sell the affected property to the Conards for $30,000. When the Conards did not respond to his offer, Massey increased his price to $40,000. After the Conards did not accept that offer, Massey threatened legal action and informed them that his new selling price would be $50,000. Massey threatened to build a concrete wall along his property line if the encroachment was not corrected and the concrete not removed.

At some point, the Conards notified Stewart Title about Massey's claim. An independent title examination confirmed that Massey was indeed correct and that Massey held superior title to that portion of the Conards' property lying in Land Lot 938. By a letter dated September 21, 2000, Stewart Title informed Wilkinson Homes that a title search had determined that Massey held "title to the portion of the subject property lying to the north of the land lot line, as shown on the enclosed plat." The letter advised, "Upon the payment of any claim by Stewart Title, Mr. and Mrs. Conard's rights against you will be subrogated to Stewart Title."

Stewart Title paid $40,000 to Massey in exchange for a quitclaim deed to the Conards that purportedly included only the affected

property. Stewart Title then demanded that Wilkinson Homes reimburse its $40,000 payment. After Wilkinson Homes refused that demand, Stewart Title sued Wilkinson Homes and its president, Robert Wilkinson, Jr., individually. Claiming damages of no less than $40,000, plus prejudgment interest, Stewart Title sued for breach of warranty of title and to recover attorney fees and expenses. Stewart Title and Wilkinson Homes both filed motions for summary judgment.

Stewart Title contended that as a matter of law, Wilkinson Homes and its president had breached the general warranty of title in the deed. Stewart Title asserted that under the Conards' policy it was subrogated to the Conards' rights and interests and therefore was entitled to recover for the breach of warranty of title in the warranty deed.

Wilkinson Homes contended that the title insurance policy did not provide survey coverage since the policy excepted coverage for losses which arise by reason of encroachments, overlaps, boundary line disputes, "or other matters which a correct survey would disclose." It asserted that "[a] correct survey would have disclosed this matter." It argued that any claim submitted by the Conards would have been excluded, so that Stewart Title's payment of $40,000 on behalf of the Conards constituted a "voluntary payment" for which Stewart Title could not recover from Wilkinson Homes. It also claimed that Stewart Title lacked standing to assert a claim for breach of warranty because the policy did not authorize subrogation.

In addition, Wilkinson Homes faulted Stewart Title for its agent's failure to follow applicable title standards, arguing that Stewart Title's agent should have discovered the error in the Conards' chain of title that first appeared in a 1987 deed. An expert witness for Wilkinson Homes testified that OCGA § 33-7-8 requires a title insurance contract to " 'be written only upon evidence or opinion of title obtained and preserved by the insurer.' " Citing the same Code section, the expert testified that Stewart Title's title agent "had an obligation to conduct a title examination" and that "[i]n examining the title, Stewart Title's title agent should have traced the title back to determine where Albert James Holder's grantees obtained title to Land Lot 938. This is required by the above-quoted statute and Georgia's Title Standards." Wilkinson Homes contended that any damages suffered by Stewart Title were the result of the acts and omissions of its own agent, and argued that "Stewart Title should not be able to rely on inaccurate title work performed or supervised by its own agent," then recover for its agent's negligence.

The trial court granted summary judgment to Robert Wilkinson, Jr., individually, finding that he executed the warranty deed in his official capacity as corporate president. As to the corporation, the trial

court rejected Wilkinson's argument that Stewart Title lacked standing, despite finding that Stewart Title lacked any contractual or statutory right to bring its claims against Wilkinson Homes. Nevertheless, by applying the doctrine of equitable subrogation, the court found that Stewart Title had standing to sue for breach of warranty of title. The court noted: "The Conards have been fully compensated for their damage by [Stewart Title], and Defendants are the wrongdoers. Therefore, [Stewart Title] has a right of subrogation to the Conards' claim." The court granted summary judgment to Stewart Title and against Wilkinson Homes on the issue of liability for breach of warranty of title. The court denied summary judgment on damages, however, recognizing the existence of a material issue of disputed fact as to the value of the land involved. Wilkinson Homes appeals, and Stewart Title cross-appeals.

*Case No. A04A1770*

1. (a) Wilkinson Homes contends that the trial court erred in denying its motion for summary judgment and by granting summary judgment to Stewart Title. Wilkinson Homes argues that because the title insurance policy that Stewart Title issued to the Conards expressly excludes boundary line disputes, Stewart Title made a voluntary payment for which it cannot recover from Wilkinson Homes. We disagree.

By warranty deed, Wilkinson Homes conveyed to the Conards:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS 938 AND 1007 OF THE 2ND DISTRICT, 2ND SECTION, FULTON COUNTY, GEORGIA, BEING LOT 14, PHASE 5, UNIT A, LITCHFIELD HUNDRED, AS PER PLAT RECORDED IN PLAT BOOK 192, PAGE 55, IN THE OFFICE OF THE CLERK OF THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA, WHICH RECORDED PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART OF THIS DESCRIPTION.

The warranty deed obligated and continues to obligate Wilkinson Homes, as grantor, to "warrant and forever defend the right and title to the above described property unto the said Grantee against the claims of all persons whomsoever."

By a general warranty of title in a deed, the grantor warrants against the valid claims of all persons. OCGA § 44-5-62; see *Benton v. Gaudry*, 230 Ga. App. 373, 375 (2) (496 SE2d 507) (1998); *Northside Title &c. Co. v. Simmons*, 200 Ga. App. 892-893 (409 SE2d 885) (1991).

Massey asserted a claim against the Conards to part of the property included in the legal description in their deed. "If the property involved is described by boundaries and if a portion of the property within those boundaries was owned by someone other than [the grantor in the warranty deed], this amounts to a defect in title as contemplated by OCGA § 44-5-36." (Citation and punctuation omitted.) *Etheridge v. Fried,* 183 Ga. App. 842, 843 (2) (360 SE2d 409) (1987).

An examination of Massey's and the Conards' chains of title confirmed that Massey and his predecessors, not Wilkinson Homes and its predecessors, owned that portion of the Conards' lot which was in Land Lot 938. So, at the time of the conveyance, Massey, not Wilkinson Homes, held superior title to that portion of the Conards' lot located in Land Lot 938. As a matter of law, since Wilkinson Homes could not convey title to property to which it did not have title, "[t]his amounts to a defect in title." *Etheridge,* supra at 843. "Yielding title to property to a paramount title amounts to an eviction and constitutes a breach of warranty and would authorize the recovery for such breach." (Citations and footnote omitted.) *Weiss v. Old Republic Nat. Title Ins. Co.,* 262 Ga. App. 120, 123 (1) (584 SE2d 710) (2003). Therefore, the conveyance by Wilkinson Homes to the Conards of property owned by Massey constituted a breach of warranty of title in the deed. Id. The Conards' claim against Wilkinson Homes for that breach arose irrespective of the existence of the title policy.

Wilkinson Homes' effort to cast the title defect as a boundary line dispute for which the policy excepts coverage is unpersuasive. A reading of the "Short Form Residential" title policy issued by Stewart Title to the Conards leads to the inescapable conclusion that the policy provides coverage for the defect in title discovered after the Conards purchased the property. Page one of the Conards' title insurance policy states:

> SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, STEWART TITLE GUARANTY COMPANY . . . insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:
>
> 1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
>
> 2. Any defect in or lien or encumbrance on the title:

The policy further recites: "The land referred to in this policy is situated in County of FULTON, Georgia, and is described below:" and then repeats the legal description in the warranty deed. The breach in the warranty of title here arose as to that portion of the property that had vested in and was owned by Massey who held a paramount title. See *Weiss*, supra, 262 Ga. App. at 123.

Trying to cast the issue as a boundary line dispute, Wilkinson Homes argues that the survey exception would have defeated any claim to coverage brought by the Conards. We disagree. Subsection (c) of the standard exceptions on Schedule B excepts: "[e]ncroachments, overlaps, boundary line disputes, or other matters which a correct survey would disclose." As to whether an accurate survey would have disclosed the encroachment, we find this section of the policy inapplicable.

Both the Conards' 1999 survey and Massey's 2000 survey were apparently "accurate," insofar as the information each relied upon was concerned. The Conards' 1999 survey of the property included portions of Land Lot 938 and Land Lot 1007 and did not reveal any part of the driveway or turnaround as encroaching onto Massey's property. The Conards' survey did not disclose the problem that existed in the chain of title. Massey's survey, on the other hand, also "an accurate survey," revealed that the existing improvements were encroaching onto Massey's adjoining land. Massey's surveyor, however, testified that in preparing his affidavit and performing his survey, he had reviewed, among other things, Massey's 1983 deed, the legal description recorded in the land records in the warranty deed dated November 24, 1987, between Albert James Holder and Continental Southern, Inc., and certain surveys and plats. The defect in title is not attributable to a surveying error or to an incorrect survey but is an error that arose in the legal description in the Conards' chain of title. The dispositive issue is not a boundary line dispute but a failure of title to vest in the Conards, a defect which Wilkinson Homes promised to warrant and forever defend against all claims.

(b) Next we consider whether Stewart Title, despite the alleged negligence of its own agent, has a right of subrogation to recover for the breach of warranty of title. Wilkinson Homes argues that the short form of the policy issued to the Conards does not afford Stewart Title any such right.

Legal subrogation arises as a matter of equity without any agreement; conventional subrogation depends upon a contract. See *Carter v. Banks*, 254 Ga. 550, 552 (330 SE2d 866) (1985). Even assuming that the short form of the policy does not provide Stewart Title any contractual right to recover for the breach of warranty, the doctrine of equitable subrogation applies here. Massey asserted a bona fide claim against the warranty of title in the Conards' deed, and

Stewart Title arranged to settle Massey's claim. Stewart Title informed Wilkinson Homes of the problem before making the payment to Massey. In these circumstances, like the trial court, we find that Stewart Title has an equitable right to subrogation and, therefore, had standing to sue Wilkinson Homes. See generally *Vigilant Ins. Co. v. Bowman*, 128 Ga. App. 872, 874 (198 SE2d 346) (1973).

2. Wilkinson Homes argues that, in the alternative, jury issues remain as to whether the policy excludes the Conards' loss and whether Stewart Title's recovery for making the voluntary payment is foreclosed. These contentions are disposed of by our holding in Division 1.

### Case No. A04A1771

3. Stewart Title contends that the trial court erred by granting summary judgment as to Robert Wilkinson, Jr., individually and in denying summary judgment to Stewart Title as to him individually. Stewart Title argues that the warranty deed bound Robert G. Wilkinson, Jr., individually, because the deed was not properly attested to and was not countersigned by another corporate official.

The warranty deed plainly and unambiguously designates Wilkinson Homes, Inc. as the sole grantor. The face of the deed shows that R. G. Wilkinson, Jr. executed the deed as president and on behalf of Wilkinson Homes, Inc. The name R. G. Wilkinson, Jr. does not appear in the chain of title. A copy of a corporate resolution indicates that R. G. Wilkinson, Jr. was expressly authorized to execute warranty deeds on behalf of the corporation and that his signature alone could legally bind the corporation. Stewart Title points to no evidence that Robert Wilkinson, Jr., as an individual, owned the realty conveyed to the Conards or that he individually warranted the title. Therefore, Robert Wilkinson, Jr. was entitled to judgment as a matter of law.

4. Stewart Title claims that the trial court erred in denying summary judgment on its damages for breach of warranty of title because those damages were liquidated.

"A debt is liquidated when it is certain how much is due and when it is due." (Citations and punctuation omitted.) *Bush v. Northside Trucking*, 252 Ga. App. 729, 731 (1) (556 SE2d 909) (2001). When the amount due is uncertain and must be determined by a jury, it is not a liquidated claim. *Marathon Oil Co. v. Hollis*, 167 Ga. App. 48, 51-52 (3) (305 SE2d 864) (1983).

The damages here are not liquidated because they remain in dispute. Wilkinson Homes offered evidence that Massey initially tried to negotiate with the Conards and that after the Conards did not respond, Massey began making demands. Other evidence suggests

that Massey first offered to sell the property for $30,000, but when a delay ensued and Stewart Title misplaced the file, Massey increased his asking price.

In addition, Wilkinson Homes contends that Massey quitclaimed property to the Conards in Land Lot 1007, property not part of the land in dispute between Massey and the Conards. Wilkinson Homes further asserts that before paying Massey, Stewart Title did not have the land at issue appraised or surveyed. Clearly, the amount of damages owed to Stewart Title is neither fixed nor certain and remains indeterminate. See *Dalcor Mgmt. v. Sewer Rooter*, 205 Ga. App. 681, 682-683 (4) (423 SE2d 419) (1992).

5. Stewart Title contends that the trial court erred by implicitly refusing to award prejudgment interest on the liquidated damages to which it was entitled.

Prejudgment interest is allowable only when the amount recoverable is liquidated. *Bush*, supra, 252 Ga. App. at 731 (1). Liquidated means fixed and certain, a sum that cannot be changed by proof. See id. As discussed above, the damages that Stewart Title seeks to obtain are not liquidated; therefore, prejudgment interest cannot be recovered.

6. Stewart Title asserts that the trial court erred by implicitly rejecting its claim to attorney fees and litigation expenses pursuant to OCGA § 13-6-11. It contends that it was entitled to judgment as a matter of law on its claim for litigation expenses pursuant to OCGA § 13-6-11. Stewart Title argues that "[w]ith minimal effort and research, the Cross-Appellees could have determined that their defenses lacked merit."

Unless authorized by statute or contract, attorney fees and the expenses of litigation are not generally available to the prevailing party. *Cary v. Guiragossian*, 270 Ga. 192, 195 (4) (508 SE2d 403) (1998). "Under OCGA § 44-5-66, the measure of damages in an action for breach of warranty is limited to the purchase money plus interest. [Cit.]" Id. OCGA § 44-5-66 did not authorize attorney fees and neither did the warranty deed at issue.

Although Stewart Title sought attorney fees under OCGA § 13-6-11 not OCGA § 44-5-66, the mere refusal to defend title pursuant to a general warranty deed will generally not give rise to a claim for attorney fees. See *Cary*, supra, 270 Ga. at 195 (5). "[U]nless the defendant was guilty of deceit or fraud in the sale of the property, or acted in bad faith as respects the existence of an incumbrance on the property when [the defendant] sold it, the plaintiff can not, in a suit to recover damages for a breach of the warranty, recover attorney's fees for prosecuting the action." (Citation and punctuation omitted.) Id. Moreover, when the evidence shows the existence of a genuine factual or legal dispute as to liability, the amount of damages, or any

comparable issue, then attorney fees are not authorized. *4WD Parts Center v. Mackendrick*, 260 Ga. App. 340, 345 (2) (c) (579 SE2d 772) (2003). The evidence here shows the existence of genuine legal and factual disputes as to liability as well as to the amount of damages. See id. Since Stewart Title did not allege fraud or deceit, in order to prevail on its bad faith claim, Stewart Title must prove that Wilkinson Homes acted in bad faith when it sold the property to the Conards. See *Cary*, supra. Under these facts, we cannot say that Stewart Title was entitled as a matter of law to attorney fees under OCGA § 13-6-11. See *Lexmark Carpet Mills v. Color Concepts*, 261 Ga. App. 622, 627-628 (2) (583 SE2d 458) (2003).

*Judgments affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED FEBRUARY 10, 2005.

*Ray & Sherman, James M. Sherman, Tama K. Retherford, Margaret G. Geer*, for Wilkinson Homes, Inc. et al.

*McCalla, Raymer, Padrick, Cobb, Nichols & Clark, Monica K. Gilroy, Carol V. Clark, Peter L. Lublin*, for Stewart Title Guaranty Company.