A06A1758. ANDERSON et al. v. COMMONWEALTH LAND TITLE INSURANCE COMPANY.
(644 SE2d 414)

ADAMS, Judge.

Wayne David Anderson and Rickie Joseph Little brought suit against Commonwealth Land Title Insurance Company after the insurer failed to defend them in a suit to quiet title brought by certain neighbors in their condominium complex. Anderson and Little appeal

from the trial court's grant of summary judgment in favor of Commonwealth and the denial of their own motion for partial summary judgment. For the reasons set forth below, we affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review the grant of summary judgment de novo, construing the evidence in favor of the nonmovant." (Citation and punctuation omitted.) *Brazier v. Phoenix Group Mgmt.*, 280 Ga. App. 67 (633 SE2d 354) (2006).

So construed, the record shows that Anderson and Little purchased Unit 5 in an Atlanta condominium known as "The Bennett" by warranty deed dated March 20, 1996. In making this purchase, Anderson and Little relied upon representations made by the seller that a courtyard area adjacent to the condominium was a limited common element reserved exclusively for the use of the owners of Unit 5. They also proffered evidence indicating that the courtyard had been considered a limited common element for Unit 5 from the time of the initial condominium development. Delphia Lamberson, the original purchaser of Unit 5,[1] furnished an affidavit indicating that she bought the property in reliance upon the developer's representation that the courtyard would be for the exclusive use of that unit. Prior to her purchase in October 1981, Lamberson was shown a plat, recorded at Deed Book 113, page 87, reflecting the proposed courtyard area (the "First Plat"). A copy of that plat introduced at the summary judgment hearing bears a handwritten notation indicating that the proposed courtyard was a "limited common space for Unit 5." Lamberson paid the developer an additional premium to enclose the courtyard with a brick wall, surrounding the courtyard on all sides except that bordering Unit 5. A gate in one of the walls allowed access to a concrete parking pad within the courtyard, but only Lamberson had keys to that gate. The only other access was through Unit 5. Throughout the period Lamberson owned Unit 5, she had sole responsibility for maintaining the courtyard.

After the brick wall was completed, Lamberson and the developer agreed to amend the condominium declaration to incorporate a new plat, filed December 4, 1981 at Plat Book 5, page 113 (the "Second Plat"), showing the completed courtyard and the brick wall. Lamberson indicated that she agreed to this amendment because the courtyard as built differed somewhat from the boundaries shown on the First Plat. Lamberson stated the Second Plat was not intended to convert the courtyard from a limited common element to a common element for the use of all unit holders. The Second Plat contains no

---

[1] She was also the first purchaser of any unit at The Bennett.

specific notations indicating the use or ownership of this area, but it does reflect the courtyard area, the brick wall surrounding it and the gate leading to a concrete parking pad designated as belonging to Unit 6 of the condominium. According to Lamberson, however, this designation was a scrivener's error, which appears on both plats. She stated that the parking pad within the courtyard was not convenient to Unit 6 and was never used by the Unit 6 owner. Rather, the space shown on the plats as designated for Unit 5 was more convenient to, and was used by, Unit 6. Conversely, she never used the parking spot designated for Unit 5 while she was the owner because it was not convenient to her unit.

By the time that Anderson and Little purchased Unit 5, the gate for access to the courtyard's parking pad was completely blocked by an overgrown juniper bush, and the gate was padlocked from the inside. Anderson and Little continued to maintain the courtyard and spent more than $15,000, plus "sweat equity," repairing and improving the brick wall and landscaping the courtyard. No other property owners contributed to the maintenance of the courtyard.

No one made any claim to the area until 1999 when the owner of Unit 2 complained that the courtyard should be for common use, but took no action to enforce her claim at the time. Two years later, however, after Anderson and Little entered into a contract to sell Unit 5 for $290,000, the owners of Units 1, 2 and 4 filed a quiet title action against Anderson and Little and a notice of lis pendens against Unit 5.

Anderson and Little had obtained title insurance through Commonwealth in conjunction with their purchase of Unit 5, and they promptly forwarded the quiet title complaint to Commonwealth asking that the insurer undertake a defense of the action. Five days later, however, Commonwealth sent counsel for Anderson and Little a letter declining to undertake the defense on the ground that the title policy did not insure ownership rights in the courtyard area.

The closing on the sale of Unit 5 was scheduled for May 1, 2001, and Anderson and Little were planning to move to Costa Rica, contingent upon the pending sale. Anderson, Little, the proposed buyer and the plaintiffs in the quiet title action subsequently entered into a three-way settlement of the matter, whereby the proposed purchaser accepted the property subject to the claims made in the quiet title action, the plaintiffs in that action dismissed the lawsuit and cancelled the lis pendens, and Anderson and Little accepted a $10,000 reduction in the purchase price. The proposed settlement was presented to Commonwealth, which maintained its position that the title insurance was inapplicable to the quiet title action. Anderson and Little later initiated this action for breach of contract to recover

the $10,000 in reduced purchase price and $2,000 in attorney fees expended in obtaining the settlement.

Commonwealth's title policy insured Anderson and Little against loss or damage sustained, inter alia, by reason of "[t]itle to the estate or interest described in Schedule A [of the policy] being vested other than as stated" in that schedule. The policy also insured against loss arising from "any defect, lien or encumbrance on the title." Schedule A described the covered property as

> ALL THAT TRACT OR PARCEL OF LAND . . . BEING IDENTIFIED AND DEPICTED AS CONDOMINIUM UNIT NO. 5, THE BENNETT, A CONDOMINIUM ON THAT CERTAIN PLAT RECORDED IN CONDOMINIUM PLAT BOOK 5, PAGE 113, FULTON COUNTY RECORDS, TO-GETHER WITH ITS APPURTENANT PERCENTAGE OF UNDIVIDED INTEREST IN THE COMMON ELEMENTS OF SAID THE BENNETT, A CONDOMINIUM, AS PRO-VIDED FOR IN THAT CERTAIN DECLARATION FOR THE BENNETT [recorded in the Fulton County records].

This legal description is the same found in the March 20, 1996 warranty deed conveying the property to Anderson and Little.

Commonwealth moved for summary judgment on the ground that none of the documentation of record indicated that the courtyard area was a limited common element appurtenant to Unit 5 to which other unit owners would not have access. Thus, Commonwealth argued that it did not insure Anderson and Little against the claims of the other property holders to the courtyard. Anderson and Little filed a cross-motion for partial summary judgment on the ground that the warranty deed conveying them title to Unit 5 also conveyed title to all common elements and limited common elements, including the courtyard; therefore, they assert that the courtyard was covered by the Commonwealth policy. The trial court agreed with Common-wealth, granting the insurer's motion and denying the cross-motion.

By its terms, the title policy insured Anderson and Little for the same interest conveyed to them by the March 1996 warranty deed. See *Security Union Title Ins. Co. v. RC Acres, Inc.*, 269 Ga. App. 359, 362 (1) (604 SE2d 547) (2004). Title insurance "insures only the warranty of title contained in the deed"; it does not insure any representations that a seller makes in connection with the purchase. (Citation omitted.) *White v. Lawyers Title Ins. Corp.*, 197 Ga. App. 780, 782 (2) (399 SE2d 526) (1990). Thus, evidence of what Anderson and Little or even Lamberson believed about the courtyard does not "create a material issue of fact as to the intent of the parties outside the description of the property contained in the title insurance policy."

Id. at 783 (4). Nor can "the scope of the policy . . . be expanded beyond its terms by such evidence." Id. Accordingly, in determining the interest insured by Commonwealth, we are bound by the legal description referenced in the title policy.

That description indicates that the seller conveyed Unit 5 as described on the Second Plat recorded at Plat Book 5, Page 113, along with that unit's percentage interest in any common elements as provided in the condominium declaration.[2] So we must also consider both the Second Plat and the condominium declaration in determining the interest insured by the title policy.

Where, as here, a legal description incorporates a recorded plat by reference, it has the same effect as if the plat were written out in the deed. *Bowman v. Walnut Mountain Property Owners Assn.*, 251 Ga. App. 91, 95 (553 SE2d 389) (2001). But the plat is intended to be only a pictorial representation of what is otherwise described. It is not intended to furnish a more particular description or to conflict with the written description. *Dept. of Transp. v. Meadow Trace, Inc.*, 274 Ga. App. 267, 269 (1) (617 SE2d 246) (2005). Here, the Second Plat referenced in the property description provides no illustration of common elements or limited common elements. Nor does it designate the courtyard as belonging to any particular unit. Thus, it provides no support for the claim by Anderson and Little that the title policy insured an exclusive interest in the courtyard.

Turning to the condominium declaration, we note first that we must construe that document in light of the Georgia Condominium Act, OCGA § 44-3-70 et seq. That Act provides that any terms in its definitions section, OCGA § 44-3-71, "shall be deemed to have the meanings therein specified wherever they appear in . . . condominium instruments unless the context otherwise requires." OCGA § 44-3-75 (a) (1). And to the extent that there are any inconsistencies between the definitions in a condominium instrument and in the Act, the statutory definition controls. OCGA § 44-3-75 (c). Under the Act, the term " '[c]ommon elements' means all portions of the condominium other than the units," OCGA § 44-3-71 (4), and a limited common element is defined as "a portion of the common elements reserved for the exclusive use of those entitled to the use of one or more, but less than all, of the units." OCGA § 44-3-71 (19). Thus, the term "common elements" "is inclusive of 'limited common elements.' [Cit.]" *Frantz v. Piccadilly Place Condo. Assn.*, 278 Ga. 103, 107 (7) (597 SE2d 354) (2004).

Construing these provisions, we find that in insuring Anderson's and Little's interest in the condominium's common elements as

---

[2] See also OCGA § 44-3-73.

defined by the declaration, the title policy also insured their interest in any limited common elements assigned to Unit 5 under the declaration. But we note that the Act specifically requires that any assignment of limited common elements must be "made or provided for in the condominium instruments." OCGA § 44-3-82 (a). Accordingly, Commonwealth can only be found to have insured an exclusive interest in the courtyard if The Bennett's declaration assigned it to Unit 5 as a limited common element.

The declaration specifically lists the courtyard as one of the condominium's common elements. In defining that term, the declaration tracks the language of the Act, and includes, without limitation "courtyards, grounds, the covered parking areas, storage and laundry areas in various locations throughout the building as shown on the plat, the halls and lobbies and stairwells." The declaration also designates certain of the common elements, not including the courtyard, as limited common elements.[3] But no provision in the declaration specifically assigns the courtyard as limited common element for Unit 5.

A subsequent amendment to the declaration dated March 25, 1981, provides that as additional limited common elements, each unit shall be assigned a parking space corresponding to the numbered space shown on the First Plat, which was recorded simultaneously with that amendment. While that plat contains the handwritten notation indicating that the courtyard, then a proposed courtyard, was a "limited common space" for Unit 5, we find that this notation does not constitute an assignment of the courtyard as a limited common element. Even assuming that the amendment's reference to the First Plat made it a part of the amended declaration, the plat can serve only to illustrate, not to expand, any interests otherwise assigned in the declaration. *Dept. of Transp. v. Meadow Trace, Inc.*, 280 Ga. 720, 722 (631 SE2d 359) (2006).

---

[3] Section 2.03 describes the limited common elements as follows:
Supplementing the provisions of [OCGA § 44-3-75], ownership of each Unit shall entitle the owner thereof to the exclusive use of those portions of the Common Elements consisting of (a) any heating and/or air conditioning compressors, units, components or other apparatus serving such Unit which may be located beyond the boundaries thereof, (b) any entranceways, stairways and appurtenant fixtures and facilities providing direct access to the Units, and (c) any patio or balcony together with the enclosure therefor, now or hereafter located in whole or in part adjacent to a Unit.
OCGA § 44-3-75 defines which portions of a unit's features and infrastructure, such as wiring, walls, wallpaper, plaster, and ducts, are considered common elements and which are considered limited common elements. Subsection (a) (5) provides that "[a]ny shutters, awnings, window boxes, doorsteps, porches, balconies, patios, and any other apparatus designed to serve a single unit shall be deemed a limited common element appertaining to that unit exclusively." No specific reference is made to courtyards.

Accordingly, the title policy did not insure Anderson and Little for an exclusive interest in the courtyard, and the trial court properly granted summary judgment to Commonwealth and denied the cross-motion for partial summary judgment filed by Anderson and Little.

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED MARCH 1, 2007 —
RECONSIDERATION DENIED MARCH 28, 2007.

*Smith, White, Sharma & Halpern, Furman Smith, Jr.,* for appellants.

*Glen E. Stinson,* for appellee.

