A11A0252, A11A0253. JIMENEZ et al. v. CHICAGO TITLE INSURANCE COMPANY; and vice versa.

(712 SE2d 531)

MIKELL, Judge.

Jose Jimenez and Feliberto Jimenez sued Chicago Title Insurance Company for failing to honor its agreement to insure the Jimenezes' title to certain DeKalb County real property. Chicago Title did not answer the complaint but appeared to contest damages. After a bench trial, the trial court (i) awarded the Jimenezes $90,000 to account for their loss of title to .93 acres of real property (Parcel 1), (ii) found no liability and no damages associated with the Jimenezes' claim that they did not receive marketable title to an additional two-acre tract of real property (Parcel 2), and (iii) declined to award attorney fees or penalties. In Case No. A11A0252, the Jimenezes contend that the trial court erred in failing to award damages for the loss of Parcel 2 and in failing to award attorney fees and penalties for bad faith under OCGA § 33-4-6. In Case No. A11A0253, Chicago Title claims that the trial court erred in failing to grant its motions for involuntary dismissal and that the judgment is not supported by the evidence. For the reasons set forth below, we find no merit in the claims of error asserted by either the Jimenezes or Chicago Title,

and we affirm in both cases.

The complaint shows the Jimenezes purchased certain DeKalb County real property in May 2006. At the closing, the Jimenezes paid for a title insurance policy to be issued by Chicago Title. The real property purportedly conveyed by the seller included Parcel 1, but Parcel 1 had been previously deeded by the seller to a third party, Richard Gullett. After the closing, Gullett pursued a successful action to quiet title to Parcel 1. The Jimenezes also thought they were buying Parcel 2, but Parcel 2 was erroneously omitted from the legal description drafted by the closing attorney.[1] The Jimenezes incurred attorney fees in defending Gullett's quiet title action and in seeking compensation under the title policy. Despite numerous requests, the Jimenezes never received the actual title insurance policy from Chicago Title. They alleged that Chicago Title failed to honor the claims submitted under the title insurance policy.

## Case No. A11A0252

1. The trial court held that Chicago Title was not liable for Parcel 2 because Parcel 2 was not included in the deed from the seller, and that the Jimenezes also failed to carry their burden of proving damages. The Jimenezes contend that Chicago Title admitted by its default that marketable title to Parcel 2 was not vested with the Jimenezes and that they were therefore only required to prove the value of Parcel 2 to recover damages.[2] We disagree.

The Jimenezes' complaint sets forth a title insurance claim. The parties stipulated below that an "ALTA" form policy was applicable to the dispute.[3] In their closing argument brief, the Jimenezes argued that they were entitled to damages because their title to Parcel 2 is unmarketable under the terms of the ALTA policy. The Jimenezes further contend on appeal that Chicago Title's "default admitted that the terms of the ALTA policy would be controlling as to the responsibility for damages of Chicago Title."

A default "operates as an admission by the defendant of the

---

[1] Excluding Parcel 1 and Parcel 2, the Jimenezes received approximately 9.5 acres of property from the seller. The Jimenezes' title to this property is not at issue.

[2] The trial court awarded the Jimenezes damages associated with the loss of Parcel 1. Accordingly, the Jimenezes' arguments as to Parcel 1, to the extent set forth in their appellate brief in Case No. A11A0252, are only indirectly relevant to that appeal. The Jimenezes also contend that the trial court relied on incompetent evidence in finding that the seller had agreed to correct the mistake in the legal description as to Parcel 2, leaving the Jimenezes' undamaged by the omission. We do not reach this issue because we agree with the trial court's conclusions as to liability.

[3] Only a form policy was entered into evidence, and it does not appear that an actual policy was issued. As argued by the Jimenezes' attorney at trial, "[t]he basis of the lawsuit is we paid for a policy, we didn't get it, [and] . . . we sued on . . . what we should have gotten."

truth of the definite and certain allegations and the fair inferences and conclusions of fact to be drawn from the allegations of the" complaint.[4] Chicago Title's failure to answer the complaint did not, however, lead to the admission of conclusions of law, forced inferences, and facts not well pled.[5] Relevant to Parcel 2, the complaint alleges that "[t]he plaintiffs were to have received title to the property that was described in a plat and legal description drafted by the closing attorney who was acting as Defendant's agent." Further, "[d]ue to errors on the part of the closing attorney, the Plaintiffs did not receive certain portions of the real property. The error was an incorrect legal description used." According to the complaint, the Jimenezes paid for a title insurance policy at closing, although they never received the actual policy. The complaint does not specify what the parties agreed that the title insurance policy would insure.

At trial, Chicago Title did not contest its agreement to insure title to the property described in the deed the Jimenezes received from the seller. This included Parcel 1, the property that had been previously sold by the seller to Gullett. Chicago Title took the position, however, that considering the facts alleged in the complaint it had no liability for Parcel 2, which was omitted from the legal description. This argument appears well-founded because "[t]itle insurance insures only the warranty of title contained in the deed."[6] Pretermitting whether the complaint could support a claim in tort arising out of a breach of duty of Chicago Title's agent in preparing the legal description, the complaint does not establish by well-pled facts, nor the fair inferences to be drawn therefrom, that Chicago Title agreed to insure marketable title to property which was not conveyed to the Jimenezes by deed. It follows that the trial court did not err in refusing to award damages for breach of an agreement to insure title to Parcel 2.[7]

2. The Jimenezes claim that the trial court incorrectly applied OCGA § 33-4-6 in finding that Chicago Title did not act in bad faith and was not liable for attorney fees and penalties thereunder. We disagree.

To establish liability for penalties and attorney fees under OCGA

---

[4] (Citations and punctuation omitted.) *Stroud v. Elias*, 247 Ga. 191, 193 (1) (275 SE2d 46) (1981).

[5] See id.

[6] (Citation and punctuation omitted.) *Anderson v. Commonwealth Land Title Ins. Co.*, 284 Ga. App. 572, 575 (644 SE2d 414) (2007). Accord *Lynburn Enterprises v. Lawyers Title Ins. Corp.*, 191 Ga. App. 710, 711 (382 SE2d 599) (1989).

[7] See *Crawford v. Dammann*, 277 Ga. App. 442, 453 (4) (c) (626 SE2d 632) (2006) ("'[A] default does not preclude a defendant from showing that under the facts deemed admitted, no claim existed which would allow a plaintiff to recover.") (footnote omitted).

§ 33-4-6,[8] "the insured must prove: (1) that the claim is covered under the policy, (2) that a demand for payment was made against the insurer within 60 days prior to filing suit, and (3) that the insurer's failure to pay was motivated by bad faith."[9] Since it imposes a penalty, the statute's requirements are strictly construed.[10]

In their complaint, the Jimenezes contended that they were entitled to attorney fees "allowed under the policy and allowed under Georgia law," and they argue that Chicago Title's liability is admitted by its default. "[W]hile a default operates as an admission of the well-pled factual allegations in a complaint, it does not admit the legal conclusions contained therein."[11] The well-pled factual allegation set forth in the complaint does not establish Chicago Title's liability for attorney fees and penalties under OCGA § 33-4-6.[12]

The Jimenezes also argue that the evidence showed that they demanded that Chicago Title pay their claim under the policy and that Chicago Title acted in bad faith in delaying payment. Bad faith may be shown by demonstrating that under the policy "and under the facts surrounding the response to that demand, the insurer had no 'good cause' for resisting and delaying payment."[13] The determination of bad faith is for the trier of fact.[14] Although the Jimenezes argue that Chicago Title failed to present evidence from a claims adjuster or an expert witness as to its process in evaluating the claim, "the insured bears the burden of proving that the refusal to pay the claim was in bad faith."[15]

The evidence shedding light on the Jimenezes' title insurance claims and Chicago Title's response thereto was generally limited to

---

[8] OCGA § 33-4-6 (a) provides in pertinent part:
In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer. . . .

[9] (Citation omitted.) *BayRock Mtg. Corp. v. Chicago Title Ins. Co.*, 286 Ga. App. 18, 19 (648 SE2d 433) (2007).

[10] Id.

[11] (Footnote and emphasis omitted.) *Bridges v. Wooten*, 305 Ga. App. 682, 683 (1) (700 SE2d 678) (2010).

[12] See *Stroud*, supra (admitted facts did not give rise to a conclusion of law that punitive damages were authorized).

[13] (Citation omitted.) *Ga. Intl. Life Ins. Co. v. Harden*, 158 Ga. App. 450, 454 (2) (280 SE2d 863) (1981).

[14] *St. Paul Fire &c. Ins. Co. v. Snitzer*, 183 Ga. App. 395, 397 (2) (358 SE2d 925) (1987).

[15] (Citation and punctuation omitted.) *Progressive American Ins. Co. v. Horde*, 259 Ga. App. 769, 770 (2) (577 SE2d 835) (2003).

a series of letters exchanged between the Jimenezes' attorney and representatives of Chicago Title. The letters show that after notifying Chicago Title in February 2008 of Gullet's action to quiet title to Parcel 1, the Jimenezes' attorney threatened in a May 12, 2008 correspondence to sue Chicago Title in view of "the failure of your company to honor the coverage issued." Chicago Title did not attempt to settle the claim until October 2008. The letters also show, however, that Chicago Title did not deny coverage, but responded to the claim by stating its intent to investigate; that it hired an appraiser to evaluate the Jimenezes' loss; and that Chicago Title tendered a check for $64,610 in light of that evaluation.[16] The tender was rejected by the Jimenezes because they disagreed with the appraiser's valuation. Setting aside the issue of whether the dispute as to the valuation of the loss precluded a bad faith award,[17] the trial court could conclude that Chicago Title did not, without good cause, resist or delay payment of a claim covered by the policy, but delayed its response to the Jimenezes' demand for performance under the policy because it had not completed its investigation into the amount of the loss.[18] As the trier of fact, the trial court was entitled to find that Chicago Title's actions were not motivated by bad faith, and we find no error.

## Case No. A11A0253

3. Chicago Title contends that the evidence was insufficient to support the trial court's award of damages for the loss of title to

---

[16] Under the ALTA policy, the insurer's payment obligation arises when the "extent of loss or damage has been definitely fixed."

[17] See, e.g., *B. S. S. B., Inc. v. Owners Ins. Co.*, 2010 U.S. Dist. LEXIS 4106 (III) (C) (M.D. Ga. Jan. 20, 2010) (As insurer pointed to evidence showing that the reason for delay in payment was a dispute over how much was owed under the policy and there was a lack of evidence as to its bad faith, insurer was entitled to summary judgment on insured's bad faith claim.).

[18] See, e.g., *BayRock Mtg. Corp.*, supra, 286 Ga. App. at 19 (demand for immediate payment under policy did not support bad faith claim when the insurer had additional time to investigate the loss) (citation and punctuation omitted). The Jimenezes also assert that Chicago Title's tender in settlement of their claim was not only untimely but was insufficient because it did not purport to cover their attorney fees in defending the quiet title action. This argument does not show error by the trial court in denying their bad faith claim. Under the ALTA policy Chicago Title was required to defend the insured in litigation against adverse claims, if requested, but the Jimenezes did not make such a request. Chicago Title was also authorized to pay the insured the loss or damage provided for under the policy as an alternative to defending third-party litigation. Although the ALTA policy also contemplates reimbursement to the insured of costs, attorney fees, and expenses "which were authorized by [Chicago Title]," the Jimenezes do not show that any such fees were authorized. Compare *Atlantic Title Ins. Co. v. Aegis Funding Corp.*, 287 Ga. App. 392, 396 (1) (651 SE2d 507) (2007) (Rather than paying insured's claims, insurer sued the insured, "relying on fanciful allegations of factual conflict to delay or avoid legitimate claims payment.") (punctuation and footnote omitted).

14

Parcel 1, and that the trial court erred in denying its motions for involuntary dismissal at the close of the Jimenezes' case and at the close of evidence.[19] We disagree.

(a) Where the trial court is sitting as the trier of fact, we will not disturb its ruling on a motion for involuntary dismissal under OCGA § 9-11-41 (b) if there is any evidence to support the trial court's findings.[20] The trial court denied Chicago Title's motions for involuntary dismissal because it concluded, in light of all of the evidence, "including circumstantial evidence and the reasonable inferences that flow from the evidence," that the Jimenezes offered evidence of the diminishment in value of their property. Chicago Title contends that the Jimenezes did not produce any such evidence. We agree with the trial court.

Here, the seller purported to sell 10.5 acres of property to the Jimenezes but did not effectively convey title to an approximately one-acre portion of the property included in the deed, Parcel 1, because it was owned by Gullett. "If the property involved is described by boundaries and if a portion of the property within those boundaries was owned by someone other than the grantor in the warranty deed, this amounts to a defect in title."[21]

Under the ALTA policy, Chicago Title is liable for "[t]he difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy."[22] As aptly described by Chicago Title in its post-trial brief, "the measure of damages . . . is the difference between the value of . . . the 10.5 acre purchased parcel and . . . the remaining 9.5-acre parcel."

At trial, the Jimenezes' appraiser opined as to the value as of the time of closing of the remaining 9.5-acre parcel ("Parcel 3"), thus providing direct evidence of one of the two variables for calculating

---

[19] Although Chicago Title moved for directed verdict, in a nonjury case such motions are treated as motions for an involuntary dismissal under OCGA § 9-11-41 (b). See *Rice v. Lost Mt. Homeowners Assn.*, 269 Ga. App. 351, 358 (8) (604 SE2d 215) (2004). Here, the trial court, as permitted by OCGA § 9-11-41 (b), also declined to render judgment before the close of evidence.

[20] *Safeway Ins. Co. v. Holmes*, 194 Ga. App. 160, 161 (1) (390 SE2d 52) (1990).

[21] (Citation and punctuation omitted) *Wilkinson Homes, Inc. v. Stewart Title Guaranty Co.*, 271 Ga. App. 577, 580 (1) (a) (610 SE2d 187) (2005).

[22] This is consistent with the general method of computing damages for breach of a title insurance policy:

[T]he measure of damage for a breach by an insurer under a policy insuring the title against encumbrances or encroachments is the difference between the value of the property when purchased with the encumbrance or encroachment thereon, and the value of the property as it would have been if there had been no such encumbrance or encroachment.

(Citation omitted.) *U. S. Life Title Ins. Co. v. Hutsell*, 164 Ga. App. 443, 446 (1) (296 SE2d 760) (1982).

damages.[23] The Jimenezes' appraiser also testified to the value of Parcel 1. Parcel 1 and Parcel 3, together, constituted the insured estate, and so the trial court had evidence that was at least probative as to the value of the entire purchased property. For example, Chicago Title's appraiser, who was explicitly tasked with estimating the "difference in value of the whole . . . and the remainder," proceeded to value "the 9½ acre parcel currently owned by the Jimenezes" (Parcel 3) and then "the one acre parcel owned by the Gulletts" (Parcel 1).[24] There was also extensive testimony as to the character of the properties at issue, comparable sales, and valuation methodologies, among other evidence, which the trial court could consider in inferring that the plaintiff had demonstrated a diminishment in value of the purchased property.[25] The trial court was not required to conclude that the Jimenezes had "shown no right to relief."[26]

(b) Chicago Title also contends that there was no evidence to support the amount of damages awarded. "On appellate review of a bench trial, we must affirm the court's award of damages if there is any evidence showing with reasonable certainty the amount of damages. So long as the award is within the range of the evidence adduced, we will affirm the trial court's judgment."[27]

The trial court awarded the Jimenezes $90,000 to account the loss of title to Parcel 1. The trial court was thoroughly informed as to the condition, location, and possible and actual uses of the properties.[28] The opinion testimony as to the value of Parcel 1 ranged from $64,100 to $120,000, the value of Parcel 3 was opined to be $560,000, and the trial court had sufficient information to determine with reasonable

---

[23] See id. at 447 (1). ("Evidence was given of the appraised value of the property at the time of the purchase, considering the diminished quantity of the land."). Compare *Dept. of Transp. v. Morris*, 263 Ga. App. 606, 608-609 (1) (588 SE2d 773) (2003) (In condemnation action, trial court erred in failing to direct verdict for Department of Transportation as there was an absence of evidence of consequential damages.).

[24] It is also apparent from the record that Chicago Title's tender for the loss suffered by the Jimenezes was exactly the amount that its appraiser valued Parcel 1, which weakens its argument that the value of Parcel 1 is not relevant to the amount of damages suffered by the Jimenezes.

[25] See generally *Rafferzeder v. Zellner*, 272 Ga. App. 728, 729 (1) (613 SE2d 229) (2005) ("Questions of value are peculiarly for the determination of the factfinder, where there is any data in the evidence upon which the factfinder may legitimately exercise its own knowledge and ideas.") (citation, punctuation and footnote omitted).

[26] OCGA § 9-11-41 (b). See also *Smith v. Gen. Finance Corp.*, 143 Ga. App. 390, 391 (1) (238 SE2d 694) (1977) ("[I]n order to sustain [grant of directed verdict for failure to prove damages], there must be a complete absence of any competent evidence on this issue.") (citation omitted).

[27] (Footnotes omitted.) *Cannon Air Transp. Svcs. v. Stevens Aviation*, 249 Ga. App. 514, 518 (5) (548 SE2d 485) (2001).

[28] See *Freedman v. Housing Auth. of Atlanta*, 108 Ga. App. 418, 422 (6) (136 SE2d 544) (1963).

certainty the diminishment in value of the property purchased by the Jimenezes due to the loss of Parcel 1. The trial court's award "was within the range of evidence presented, and it must be affirmed."[29]

*Judgments affirmed. Smith, P. J., and Dillard, J., concur.*

DECIDED JUNE 15, 2011.

*Douglas R. Daum*, for appellant.
*Balch & Bingham, David J. Marmins, Elizabeth R. Johnson*, for appellee.

---

[29] *Freightliner Chattanooga, LLC v. Whitmire*, 262 Ga. App. 157, 163 (1) (584 SE2d 724) (2003). See *Freedman*, supra (where opinion testimony as to value ranged from $37,500 to $56,000, "[t]he evidence would have warranted a finding of any amount between these sums").