**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 16, 2014**

# In the Court of Appeals of Georgia

A14A0242. HENDERSON et al. v. GEORGIA FARM BUREAU  JE-104
   MUTUAL INSURANCE COMPANY.

ELLINGTON, Presiding Judge.

Jennifer and Lee Henderson filed this action in the Superior Court of Lincoln County against Georgia Farm Bureau Mutual Insurance Company, seeking benefits under their home owners' insurance policy for water damage to their home and for their loss of use, statutory penalties for Georgia Farm Bureau's alleged bad faith in refusing to pay benefits, and attorney fees. A jury found in favor of the Hendersons and awarded them $27,799 for damage to the structure not already paid by Georgia Farm, $8,400 for their loss of the use of the property, $6,000 in penalty for Georgia Farm Bureau's bad faith in refusing to pay a covered loss, and $35,000 in attorney fees. Georgia Farm Bureau filed a motion for judgment notwithstanding the verdict,

arguing, inter alia, that there was no evidence that the Hendersons' home sustained any water damage that was separate and distinct from mold damage, for which Georgia Farm Bureau paid benefits under a special rider. After a hearing, the trial court granted Georgia Farm Bureau's motion for judgment notwithstanding the verdict "in its entirety[,]" The Hendersons appeal, and, for the reasons explained below, we reverse.

> A motion pursuant to OCGA § 9-11-50 (b) for judgment notwithstanding the verdict may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is conflicting evidence, or there is insufficient evidence to make a "one-way" verdict proper, judgment [notwithstanding the verdict] should not be awarded.

(Citation and punctuation omitted.) *Fertility Technology Resources v. Lifetek Med., Inc.*, 282 Ga. App. 148, 149 (637 SE2d 844) (2006).

> The appellate standard for reviewing the grant of a judgment notwithstanding the verdict is whether the evidence, with all reasonable deductions therefrom, demanded a verdict contrary to that returned by the factfinder. If there is any evidence to support the jury's verdict, viewing the evidence most favorably to the party who secured the verdict, it is error to grant the motion.

2

(Citations and punctuation omitted.) *Mosley v. Warnock*, 282 Ga. 488 (1) (651 SE2d 696) (2007).

Viewed in the light most favorable to the Hendersons, the record shows the following. Georgia Farm Bureau agreed to cover the Hendersons "against risks of direct loss to property . . . if that loss is a physical loss of property[.]" Losses caused by "[c]onstant or repeated seepage or leakage of water or the presence of condensation or humidity, moisture or vapor, over a period of weeks, months or years[,]" (hereinafter, "seepage of water, etc.") were included among the Perils Insured Against (hereinafter, "the covered risks") as long as such seepage of water etc. "and the resulting damage is unknown to all 'insureds' and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure." The policy limit for such seepage of water etc. was $153,500. Otherwise, that is, for seepage of water etc. and resulting damage that was known to an insured or was not hidden, the policy provided no coverage for losses caused by seepage of water etc.

In addition to this coverage, the Hendersons, for an additional premium, opted for additional coverage for "ensuing mold, fungi or bacteria caused by or resulting from" one of the covered risks (hereinafter, "ensuing mold"); as noted above, the covered risks included seepage of water etc. where the resulting damage was

3

unknown to all insureds and hidden as defined by the policy.[1] The limit of such additional coverage for ensuing mold was $32,675.

On October 4, 2010, Jennifer Henderson discovered a puddle of water in her kitchen and contacted Georgia Farm Bureau. Georgia Farm Bureau's contractor tore out a section of the floor and checked the kitchen, dining room, and living room floors for moisture but discovered no problems other than the area of flooring damaged by the puddle. Days later, however, the Hendersons removed another part of the floor in the kitchen and discovered standing water and black mold underneath. Georgia Farm Bureau's claims adjuster suggested that the Hendersons should vacate the house because black mold could be toxic, and the Henderson did so and were unable to return for one year.

Over the course of that year, the Hendersons' home was inspected by numerous engineers, mold remediation specialists, contractors, and repairmen, many of whom were hired by Georgia Farm Bureau in the course of addressing the Hendersons' claim for benefits. In addition to areas of mold found under floors, behind walls, and over ceilings, these workers found such damage as areas of flooring and subflooring

---

[1] If the Hendersons had not opted for additional coverage for ensuing mold, fungi or bacteria caused by one of the covered risks, Georgia Farm Bureau's standard policy excluded coverage for loss caused by "[m]old, fungi or bacteria[."

that were completely rotted through, where one "could just step through the hole and be under the house[,]" critical rot to 90 percent of the floor joists, and a "trough" or "dry riverbed" in the crawlspace, where water flowed through and collected in puddles.[2]

Ultimately, Georgia Farm Bureau conceded that the Hendersons had suffered losses caused by mold in excess of the limit of their additional mold coverage ($32,675) and tendered payment for such. Georgia Farm Bureau, however, denied the Hendersons' claim under coverage for other (non-mold) damage from seepage of water etc. (policy limit of $153,000).[3] Although the jury apparently rejected Georgia Farm Bureau's characterization of the Hendersons' losses, the trial court, after verdict, agreed with Georgia Farm Bureau, finding that

---

[2] We note that there was some evidence that, as constructed, the Hendersons' home lacked certain improvements intended to limit seepage of water or collection of condensation, such as, rain gutters, "French" drains, vapor barriers in the crawlspace, and properly installed (right-side down) subfloor insulation. There was no evidence, however, that the Hendersons were aware of those deficiencies, or the significance of such deficiencies, before the water and mold damage occurred.

[3] It is undisputed that the seepage of water that caused all of the Hendersons' property damage was unknown to them and hidden within the walls or ceilings or beneath the floors or above the ceilings until the day in October 2010 that the Hendersons lifted part of the floor in the kitchen and saw standing water and mold underneath.

[t]he overwhelming weight of the evidence established that the 'resulting damage' was not water damage. Rather, it was mold damage. As a consequence, the policy's limited mold coverage applied, and [the Hendersons] could not recover more than the mold coverage limits unless they could identify and quantify areas of the structure which were only damaged by water, not mold. There is no evidence in the record of any non-mold damage that can support an award of damage beyond the Mold Endorsement Limit, which was exhausted by Georgia Farm Bureau's earlier payment before suit was filed. . . . [The Hendersons] failed to show any damages that were caused solely by water or moisture that were separate and distinct from the mold damage to the structure. . . . Based on the evidence, there was no remaining coverage available under the policy because the actual damages sustained by [the Hendersons] were ensuing mold damages, all of which fell under [their] limited mold coverage and had been paid in full by [Georgia Farm Bureau].

1. The Hendersons contend that the trial court erred in failing to apply the policy according to its plain terms. Further, they contend that the trial court erred in ruling that there was no evidence of water damage that was separate from the mold damage for which Georgia Farm Bureau paid benefits to the mold coverage policy limit. Accordingly, they contend that the trial court erred in granting Georgia Farm Bureau's motion for judgment notwithstanding the verdict as to their claim for benefits for property damage.

6

As with any other contract, where the terms of an insurance contract "are clear and unambiguous, and capable of only one reasonable interpretation, the court is to look to the contract alone to ascertain the parties' intent." (Citation and punctuation omitted.) *Fireman's Fund Ins. Co. v. Univ. of Georgia Athletic Ass'n, Inc.*, 288 Ga. App. 355, 356 (654 SE2d 207) (2007). Even when the trial court is authorized to construe an insurance contract, because a pertinent provision is ambiguous, the trial court must construe strictly against the insurer any ambiguities in the contract and any exclusion from coverage sought to be invoked by the insurer as drafter of the document and must read the insurance contract in accordance with the reasonable expectations of the insured where possible. Id. at 357.

In concluding that the Hendersons had failed to come forward with evidence showing that the property had been damaged by water only and not by mold, the court was implicitly construing the policy of insurance to mean that mold damage is not and can never be an item of damage that results as a consequence of water seepage. This is perplexing in light of the policy's express requirement that mold damage ensue as a consequence of a covered risk, one of which is seepage of water etc.

The trial court's interpretation is also not demanded by the evidence. Although the evidence showed that all of the Hendersons' mold damage was moisture damage

7

(in the sense that mold growth and resulting damage only occurs in the presence of persistent or recurrent moisture), the evidence did *not* show the reverse, that is, that all of the Hendersons' water damage was mold damage.[4] *The Bartram, LLC v. Landmark American Ins. Co.*, 864 FSupp2d 1229, 1239 (III) (F) (N.D. Fla. 2012) (As used in a standard builder's all-risk insurance policy, an "ensuing loss" is one that follows and flows proximately from an underlying covered loss.). There was no evidence at all that the "trough" and "dry riverbed" in the crawlspace resulted from mold, that the rotted floor and subfloor, through which a person could fall into the crawlspace, resulted from mold, or that the critical failure of the floor joists resulted from mold, even if the moisture that caused these items of destruction might have *also* allowed mold to flourish.

Granted, the Hendersons apparently were not litigation-savvy enough to require the contractor whom they hired to make their home habitable, after Georgia Farm Bureau rejected their claim for non-mold benefits, to provide a line-item bill

---

[4] To the contrary, the Hendersons testified that their home had both water damage and mold damage and that water had damaged the paneling on the walls and rotted the wood supporting the walls and floor. The contractor who repaired their home identified the required repairs as being for "water damage." In addition, witnesses testified that, "[a]nytime you have mold, water has something to do with it[,]" and that "condensation occurring on the floor sheathing due to humid air conditions in the crawlspace" had, in turn, caused the mold growth.

8

attributing each item of repair to general seepage of water, etc. versus to mold. (One wonders how much such special accounting practices would have added to the total cost of repairs.) But, the evidence showed that all of the Hendersons' property damage was from the seepage of water, etc. and that, *of that damage, some* of it was from ensuing mold. Georgia Farm was entitled to pay only $32,675 for the portion of the Hendersons' property damage that resulted only from the mold. But, for those damages resulting from the seepage of water etc. that was *not* solely mold damage, a policy limit of $153,500 applied.

The trial court's order allows Georgia Farm Bureau to penalize the Hendersons, having opted into so-called "additional" mold coverage, for suffering from both non-mold-related water damage and mold-related water damage. Because the jury's verdict was authorized by the evidence, the trial court applied an inapplicable legal standard in weighing the evidence, and the trial court construed the policy contrary to its plain terms and in favor of the insurer and against coverage, the trial court erred in granting Georgia Farm Bureau's motion for judgment notwithstanding the verdict as to the jury's award for property damage.

2. The Hendersons contend that the trial court erred in granting Georgia Farm Bureau's motion for judgment notwithstanding the verdict as to bad faith and

attorney's fees, which was based on its determination that the parties had a bona fide dispute as to coverage for the Hendersons' claim for property damage. The question of bad faith is generally for the jury. *Jimenez v. Chicago Title Ins. Co.*, 310 Ga. App. 9, 12 (2) (712 SE2d 531) (2011); *Certain Underwriters &c. v. Rucker Constr., Inc.*, 285 Ga. App. 844, 850 (3) (648 SE2d 170) (2007); *First Financial Ins. Co. v. American Sandblasting Co.*, 223 Ga. App. 232, 233 (2) (477 SE2d 390) (1996); *St. Paul Fire & Marine Ins. Co. v. Snitzer*, 183 Ga. App. 395, 397 (2) (358 SE2d 925) (1987). As the Supreme Court of Georgia has explained, "[t]he proper rule is that [a] judgment [against an insurer for damages and attorney fees for bad faith in refusing to pay a claim] should be affirmed if there is any evidence to support it unless it can be said as a matter of law that there was a reasonable defense which vindicates the good faith of the insurer." *Colonial Life & Acc. Ins. Co. v. McClain*, 243 Ga. 263, 265 (1) (253 SE2d 745) (1979). We discern no basis for concluding that Georgia Farm

Bureau's defense was reasonable as a matter of law.[5] Consequently, the trial court erred in not deferring to the jury's assessment.

3. The Hendersons contend that the trial court erred in granting in part Georgia Farm Bureau's motion for summary judgment relating to bad faith and attorney's fees. The record shows that the trial court granted Georgia Farm Bureau's motion for summary judgment in part, to the extent that the Hendersons sought a bad faith penalty for the insurer's denial of their claim for the loss of the use of their home. Accordingly, the issue of whether Georgia Farm Bureau denied the Hendersons' loss of use claim in bad faith was not submitted to the jury.

Under OCGA § 9-11-56 (c)

[s]ummary judgment is warranted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

---

[5] We note that the jury heard the testimony of Georgia Farm Bureau's claims adjuster, Phillip K. Palacz, regarding his initial recommendation that the Hendersons' claim be denied in its entirety (including the mold coverage the insurer later paid) and the later handling of their claim. See Dissent at *1-2 (2). The jury was responsible for assessing the credibility of all of the witnesses, including Palacz, and determining, in the context of all of Georgia Farm Bureau's actions in the handling of the Hendersons' claims, whether the insurer's decision to pay mold coverage, that was capped by the policy at $32,675, and to then take the position that such payment precluded any coverage under the general property damage coverage, that was capped by the policy at $153,500, arose from a genuine belief that the policy so provided or whether it constituted a bad faith denial of coverage.

11

if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. We review the grant or denial of a motion for summary judgment de novo, and we view the evidence, and the reasonable inferences drawn therefrom, in a light most favorable to the nonmovant.

(Punctuation and footnotes omitted.) *Assaf v. Cincinnati Ins. Co.*, _ Ga. App. _ (Case No. A14A0145, decided June 5, 2014). As with the part of the Hendersons' bad faith claim that was submitted to the jury, see Division 2, supra, we discern no basis for concluding that Georgia Farm Bureau's defense was reasonable as a matter of law. Consequently, the trial court erred in granting in part Georgia Farm Bureau's motion for summary judgment.

*Judgment reversed. Phipps, C. J., Barnes, P. J., and McFadden, J., concur. Andrews, P. J., Ray and McMillian, J J., concur specially and in judgment only as to Division 1 and dissent as to Divisions 2 and 3.*

A14A0242. HENDERSON et al. v. GEORGIA FARM BUREAU   CWM-013
  MUTUAL INSURANCE COMPANY.


McMILLIAN, Judge, concurring specially in part and in judgment only and dissenting in part.

1. Pursuant to Court of Appeals Rule 33 (a), I concur specially and in judgment only as to Division 1.

2.  I must respectfully dissent from Divisons 2 and 3 of the majority's opinion because the record demonstrates that the Hendersons failed to prove that they were entitled to recover a bad faith penalty or attorney fees. The Hendersons assert that the trial court erred in granting a JNOV as to their claim for bad faith and attorney fees. Specifically, the Hendersons claim that GFB acted in bad faith because Palacz

initially applied an exclusion under the Policy to deny them coverage, a decision that was overruled by his superiors after the Hendersons made a written demand, and because GFB denied additional coverage under the Water Damage Coverage provision of the Policy.

> To establish liability for penalties and attorney fees under OCGA § 33-4-6, "the insured must prove: (1) that the claim is covered under the policy, (2) that a demand for payment was made against the insurer within 60 days prior to filing suit, and (3) that the insurer's failure to pay was motivated by bad faith." Since it imposes a penalty, the statute's requirements are strictly construed.

(Citations and punctuation omitted.) *Jimenez v. Chicago Title Ins. Co.*, 310 Ga. App. 9, 11-12 (2) (712 SE2d 531) (2011). "Penalties for bad faith and attorney fees are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact." (Citation and punctuation omitted.) *Bell v. Liberty Mut. Fire Ins. Co.*, 319 Ga. App. 302, 307 (3) (734 SE2d 894) (2012). And

> [t]he test of bad faith within the meaning of the law in such cases is as of the time of trial, in the final analysis, and not at the time of refusal to pay upon demand. Whatever the facts are at the time of such refusal to pay if at the trial there was a reasonable ground for the insurer to contest

2

the claim there can be no finding against the insurance company for bad faith and attorney's fees regardless of the outcome of the case.

(Citation and punctuation omitted.) *Fortson v. Cotton States Mut. Ins. Co.*, 168 Ga. App. 155, 158 (1) (308 SE2d 382) (1983). "Since it imposes a penalty, the statute's requirements are strictly construed." (Citation and punctuation omitted.) *Jimenez*, 310 Ga. App. at 12 (2).

Here, although GFB initially refused coverage, it reversed its position within 60 days of the Hendersons' demand, and after investigating to determine the amount of the Hendersons' damages, it paid them in excess of their policy limits to cover the full cost of remediation and other documented damage to furniture. Also, a genuine dispute existed as to whether GFB owed any amounts over and above the policy limits under the Mold Coverage provision. I believe that GFB reasonably contested the issue of whether they were required to pay any additional amounts under the Water Damage Coverage provision without proof of water damage separate and apart from mold damage.

Accordingly, I would find that the trial court properly granted a JNOV and summary judgment as to the Hendersons' bad faith claims.

I am authorized to state that Presiding Judge Andrews and Judge Ray join in this opinion.