**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 3, 2020**

# In the Court of Appeals of Georgia

A20A0953. GARY v. BROWN.

DILLARD, Presiding Judge.

Tracy Gary filed a lawsuit against Raghe Brown, alleging that he suffered serious injuries as a result of a motor-vehicle accident caused by Brown's negligence. At the conclusion of a trial, in which Brown essentially conceded liability, the jury awarded Gary $25,000 in damages and $100,000 for future medical expenses. Brown then filed a motion for judgment notwithstanding the verdict as to the award of future medical expenses, which the trial court granted. On appeal, Gary contends that the trial court erred in granting Brown's motion for j.n.o.v., arguing that some evidence—beyond speculation and conjecture—supported the award for future medical expenses. For the reasons set forth *infra*, we affirm.

A motion brought under OCGA § 9-11-50 (b) for judgment notwithstanding the verdict may be granted "only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment."[1] And when there is conflicting evidence, or there is insufficient evidence to make a "one-way" verdict proper, "judgment notwithstanding the verdict should not be awarded."[2] Furthermore, the standard for reviewing the grant of a judgment notwithstanding the verdict is "whether the evidence, with all reasonable deductions therefrom, demanded a verdict contrary to that returned by the factfinder."[3] As a result, if there is "any evidence to support the jury's verdict, viewing the evidence most favorably to the party who secured the verdict, it is error to grant the motion."[4]

---

[1] *Henderson v. Ga. Farm Bureau Mut. Ins. Co.*, 328 Ga. App. 396, 396 (762 SE2d 106) (2014) (punctuation omitted)); *see Hart v. Shergold*, 295 Ga. App. 94, 96 (1) (670 SE2d 895) (2008) ("A directed verdict or j.n.o.v. is required [when] there is no conflict in the evidence as to any material issues and the evidence (construed in favor of the nonmovant) demands a particular verdict" (punctuation omitted)).

[2] *Henderson*, 328 Ga. App. at 396 (punctuation omitted).

[3] *Mosley v. Warnock*, 282 Ga. 488, 488 (1) (651 SE2d 696) (2007) (punctuation omitted); *accord Henderson*, 328 Ga. App. at 396.

[4] *Mosley*, 282 Ga. at 488 (1) (punctuation omitted); *accord Henderson*, 328 Ga. App. at 396.

So viewed, the record shows that just after noon on December 20, 2014, Gary was driving his large SUV to help a friend—who was a passenger in the vehicle—move some boxes. As Gary approached the neighborhood where he was delivering his friend's boxes, he pulled into a left-hand turn lane and stopped while waiting for oncoming traffic to pass. A few seconds later, a vehicle driven by Brown rear-ended Gary's SUV at a high rate of speed, sending the SUV nearly 40 yards down the road. And while his SUV suffered significant damage, Gary and his passenger initially did not require medical treatment from the EMTs who arrived on the scene. But later that day, Gary's lower back began hurting, and so, he sought treatment at a local hospital. The emergency-room physician who treated Gary ordered x-rays, prescribed pain medication, and told him to follow up with his primary-care physician.

Subsequently, Gary's primary-care physician referred him to an orthopedic surgeon, who first saw Gary on February 5, 2015, and diagnosed his back problem as a disk herniation at the L3-4 level of his spine. In addition, the surgeon noted that Gary had back problems four years earlier, which another surgeon treated by performing a spinal fusion at the L5-S1 level of his lower back. And while the orthopedic surgeon discussed a surgical option with Gary to treat his current back

3

pain caused by the accident, he recommended an initial treatment of steroid epidural injections. Thereafter, the orthopedic surgeon saw Gary a few more times, and at his last appointment on March 9, 2015, informed him that he could follow up if necessary.

In 2016, Gary filed a lawsuit against Brown, alleging that her negligent operation of a vehicle caused the accident in which he suffered the injury to his lower back. Brown filed an answer, and discovery ensued, during which both parties and the orthopedic surgeon were deposed. Then, shortly before trial, Brown filed a motion in limine, arguing that Gary's evidence as to future medical expenses should be excluded as too speculative. But the trial court delayed ruling on the matter, explaining that it wanted to hear the evidence presented during trial before ruling on the motion. The case then proceeded to trial, during which Gary and his passenger testified, and Gary also played a video recording of the surgeon's deposition for the jury. In addition, because she was on active duty with the United States military and currently deployed overseas, defense counsel had Brown's deposition read to the jury.

At the close of evidence, Brown moved for a directed verdict as to Gary's request for future medical expenses, reiterating her earlier arguments. But even though the trial court expressed considerable skepticism as to whether the evidence

4

related to these expenses amounted to more than mere speculation, it nonetheless denied Brown's motion. Thereafter, the jury rendered a verdict in favor of Gary and awarded him $25,000 in damages and $100,000 for future medical expenses. Brown filed a motion for j.n.o.v. as to the award of future medical expenses, and Gary filed a response. Then, after holding a hearing on the issue, the trial court granted Brown's motion. This appeal follows.

Gary contends that the trial court erred in granting Brown's motion for j.n.o.v. as to the award for future medical expenses, arguing that some evidence—beyond mere speculation and conjecture—supported the jury's verdict. We disagree.

Prospective medical expenses are "recoverable in this state,"[5] but any such award must be "supported by competent evidence to guide the jury in arriving at a reasonable value for such expenses."[6] Consequently, when no evidence is presented from which the jury can "ascertain except by mere speculation and conjecture that

---

[5] *Clayton Cty. Bd. of Ed. v. Hooper*, 128 Ga. App. 817, 818 (1) (198 SE2d 373) (1973).

[6] *Bennett v. Moore*, 312 Ga. App. 445, 457 (2) (718 SE2d 311) (2011) (punctuation omitted); *see Hart*, 295 Ga. App. at 97 (1) (noting that "[a]n award of future medical expenses is authorized where it is supported by competent evidence to guide the jury in arriving at a reasonable value for such expenses" (punctuation omitted)).

5

plaintiff would ever have future medical expenses, a charge on this subject is erroneous."[7]

Here, although the orthopedic surgeon discussed the *possibility* of surgery with Gary, he nevertheless testified that he did not tell Gary at his last appointment that he needed surgery at that time, as Gary "was still relatively early on in treatment[.]" Additionally, when Brown's counsel remarked that Gary did not want to pursue surgery, the orthopedic surgeon responded:

> Well, I mean he was saying that at that time. I think—I think the conversation was that there is a surgery. We were not recommending it specifically at that moment. We were saying he needed to go have [the] epidural, but it might come back around to it. And he was saying, [']Well, I would rather be able to treat without it.[']

The surgeon also agreed when Brown's counsel asked if a recommendation for surgery was contingent upon whether the epidural injections and physical therapy improved Gary's condition and upon further diagnostic testing. Subsequently, the following exchange occurred:

---

[7] *Womack v. Burgess*, 200 Ga. App. 347, 348 (1) (408 SE2d 159) (1991) (punctuation omitted).

Q. So before you would actually say, [']Yep, I'm recommending surgery,['] number one, he would have to want it; and, number two, there would be additional tests, and you'd have to have some additional information about what he's done so far?

A. Right, some further evaluation. I would agree to that.

Indeed, even upon reexamination by Gary's own counsel, the orthopedic surgeon did not testify that he would recommend surgery with any certainty, as the following colloquy demonstrates:

Q. Now, it was your understanding that if Mr. Gary came back to your office, it was to pursue surgical intervention?

A. Or further treatment.

Finally, when questioned during the trial as to what he was asking from the jury, Gary responded: "I need to be—I want to be compensated for the things I can't do anymore and the possibility that I may have to have that surgery down the road. At this point, I'm saying no, I don't want to have the surgery, sir. I really don't want to have it." Given these circumstances, we conclude that no evidence was presented from which the jury could ascertain, except by mere conjecture and speculation, that Gary would

have any future medical expenses.[8] Accordingly, the trial court did not err in granting

Brown's motion for j.n.o.v.

*Judgment affirmed. Rickman and Brown, JJ., concur*.

---

[8] *See Bennett*, 312 Ga. App. at 457 (2) (holding that evidence did not support an award of future medical expenses to plaintiff who was injured in collision with other motorist given that plaintiff failed to show he would need any future medical treatment for problems related to his injuries from the collision); *Womack*, 200 Ga. App. at 347-48 (1) (concluding that evidence of future medical expenses was too speculative to submit to the jury in light of the fact that plaintiff's physician testified that likelihood a surgery would be required was "50/50," and that necessity for the surgery would depend upon the diagnostic results of additional tests); *Daugherty v. Vick*, 127 Ga. App. 767, 769 (3) (195 SE2d 208) (1972) (finding deposition testimony of plaintiff's physician that further studies or treatment or surgery was indicated for treatment of plaintiff's injuries suffered in automobile accident was too inconclusive and conjectural to form basis of claim for future medical expenses, and thus, denial of future medical expenses was not error).